**AMERIKOHL MINING COMPANY, INC. And John M. Stilley**
**Appellants**

v.

**PEOPLES NATURAL GAS CO. Appellees.**

Superior Court of Pennsylvania.

Argued June 9, 2004.

Filed Oct. 5, 2004.

Douglas G. Linn, II, Butler, for appellants.

David C. Serene, Indiana, for appellee.

Before: FORD ELLIOTT, TODD and PANELLA, JJ.

PANELLA, J.

¶ 1 Appellants, John M. Stilley and Amerikohl Mining, Inc. (collectively "Amerikohl"), appeal from the judgment entered on November 21, 2003 in favor of Appellee, The Peoples Natural Gas Company ("Peoples") by the Honorable Joseph A. Nickleach, P.J., Court of Common Pleas of Armstrong County.

¶ 2 On appeal, Amerikohl raises only one issue for our review:

> DID THE COURT ERR IN DETERMINING THAT THE INTENT OF THE PARTIES TO THE 1935 RIGHT OF WAY AGREEMENT WAS TO LIMIT THE MANNER IN WHICH COAL COULD BE MINED TO THE DEEP MINING METHOD ONLY?

. . .

Appellants' Brief, at vi.[1] After careful review, we affirm.

¶ 3 The facts and relevant procedural history are as follows: In 1935, Helvetia Coal Mining Company ("Helvetia") granted Peoples [2] a general right of way for the pipelines it had on Helvetia's land in Cowanshannock Township, Armstrong County. Complaint, at Exhibit "C." The 1935 Right of Way Agreement stated, in pertinent part, the following:

> Helvetia ... does hereby grant ... Peoples ... the right of way to lay, maintain, operate, replace and remove pipe lines for the transportation of water, oil or gas and/or their products similar thereto, as now laid on, over and through its lands wherever situate in Cowanshannock Township, Armstrong County, Pennsylvania[ ] ....

. . .

> This Grant of Right of Way is delivered and accepted on the expressed condition and understanding between the parties thereto, that the said Helvetia ... its successors and assigns, shall have the free and uninterrupted right to mine and remove the coal underlying said lands without being required to provide or leave support for the overlying strata or surface and the said ... Peoples ... for itself, its successors and assigns, in consideration of this Grant of Right of Way does hereby remise, release and forever discharge the said Helvetia ... its successors and assigns, of and from any and all damages to pipe lines, buildings, structures, and other properties of the said ... Peoples ... now laid or constructed or which may hereafter be laid or constructed on said lands, caused by the mining or removal of said coal and other coal an adjoining lands.

. . .

*Id.*

¶ 4 At least one of the pipelines Peoples had in Cowanshannock Township at that time, subject to the right of way, was on a tract of land known as Huskins Run. N.T., 5/20/02, at 154. This pipeline provided natural gas to a busy company town. *Id.*, at 151–154.

¶ 5 In 1939, Helvetia merged with the Rochester & Pittsburgh Coal Company ("Rochester"). *Id.*, at 6. By deed dated December 13, 1995, Rochester conveyed the Huskins Run tract, which consists of approximately 700 acres, to Stilley. Complaint, at Exhibit "A." The deed also grant-

---

1. At the time of oral argument on June 9, 2004, counsel for Appellants, Douglas G. Linn, II, Esquire, withdrew the other issue raised on appeal.

2. Peoples is a company engaged in the business of producing natural gas and in its transmission *via* pipelines.

ed Stilley an easement to surface mine [3] coal at a depth of 125 feet or less on the property. *Id.* Approximately one year after Stilley purchased Huskins Run, he discovered the 1935 Right of Way Agreement.[4] N.T., 5/20/02, at 36, 61–62.

¶ 6 On August 2, 1996, Stilley leased the mineral rights to Huskins Run to Amerikohl, a company in which Stilley is the sole shareholder. Complaint, at Exhibit "B"; N.T., 5/20/02, at 12–13. The lease permitted Amerikohl to surface mine Huskins Run and pay a royalty to Stilley for each ton of coal mined. Complaint, at Exhibit "B." Thereafter, the parties met to discuss their rights under the 1935 Right of Way Agreement. N.T., 5/20/02, at 66. It would have been possible, but cost prohibitive, for Peoples to take out all its pipelines to facilitate Amerikohl's surface mining. *Id.,* at 44. However, the parties reached an interim agreement whereby Amerikohl moved, at its own expense, certain pipelines. *Id.,* at 20–22, 44–45. Amerikohl then surface mined around the remaining pipelines. *Id.,* at 20–22.

¶ 7 On December 20, 1996, Amerikohl filed suit seeking damages and a declaration that under the 1935 Right of Way Agreement, it is entitled to surface mine all of the coal situated under Huskins Run and that Peoples must, at its expense, remove from service and relocate its pipelines. Prior to trial, the trial court entered an order bifurcating the case with the court first hearing the issue of liability.

¶ 8 A non-jury trial was held on May 20, 2002, after which the trial court entered judgment in favor of Peoples and against Amerikohl on January 8, 2003. In so ordering, the trial court held that under the terms of the 1935 Right of Way Agreement, Amerikohl did not have the right to surface mine the areas included within the right of way. Both parties filed post-trial motions, which were denied on August 14, 2003. This timely appeal followed.

¶ 9 The sole issue for our review on appeal is whether the 1935 Right of Way Agreement granting the easement permits Amerikohl to surface mine the areas within the right of way. "Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law." *Baney v. Eoute,* 784 A.2d 132, 135 (Pa.Super.2001) (citation omitted). The findings of fact of the trial judge must be given the same weight and effect on appeal as the

---

3. We note that while Amerikohl argues that we should find it has a right to surface mine the coal, in its brief, Amerikohl uses the terms "surface mine" and "strip mine" interchangeably. *See, e.g.,* Appellants' Brief at 38. As such, we also use those terms interchangeably as strip mining is a type of surface mining. "Strip mining, as the term indicates, is the stripping away of the earth surface and the horizontal withdrawal of the mineral deposits at hand." *Rochez v. Duricka,* 374 Pa. 262, 265, 97 A.2d 825, 826 (1953). Deep mining or shaft mining, by contrast, "involves the sinking of a vertical shaft into the ground and the developing from that point of tunnels and galleries which serve as vantage points from which to withdraw and lift the coal deposits through the shaft." *Id.*

4. Stilley did not discover the Right of Way Agreement because it had never been recorded. As such, the first notice Stilley received of the easement was one year after he purchased the property. *See* Trial Court Opinion, 12/31/02, at 4. Generally, to be effective, an easement must be recorded. *See* 21 P.S. § 351; *see also, Sevin v. Kelshaw,* 417 Pa.Super. 1, 611 A.2d 1232, 1237 (1992). In the present case, Amerikohl does not dispute the validity of the easement. In fact, not only does Amerikohl stipulate to the easement's authenticity, but it offers an excuse as to why Peoples did not record the easement. *See* Appellants' Brief at 10. Accordingly, we need not address the validity of the easement.

verdict of a jury. *See id.* (citation omitted). We consider the evidence in a light most favorable to the verdict winner. *John B. Conomos, Inc. v. Sun Co., Inc. (R & M),* 831 A.2d 696, 703 (Pa.Super.2003), *appeal denied* 577 Pa. 697, 845 A.2d 818 (2004). We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. *See Cavallini v. Pet City and Supply,* 848 A.2d 1002, 1004 (Pa.Super.2004). However, as the issue herein centers on the interpretation of an easement, which like any contract concerns a question of law, our scope of review is plenary. *See PARC Holdings, Inc. v. Killian,* 785 A.2d 106, 112 (Pa.Super.2001), *appeal denied* 568 Pa. 702, 796 A.2d 984 (2002).

¶ 10 From the outset we note that the parties do not dispute Amerikohl's right to conduct surface mining on the areas of Huskins Run not subject to the right of way. At issue is whether Amerikohl can surface mine the areas subject to the 1935 Right of Way Agreement. The answer to this inquiry centers on the intention of the parties at the time they entered into the Right of Way Agreement.

¶ 11 The law on the interpretation of easements is clear. A right of way is an easement, which may be created by an express grant. *See Merrill v. Mfgrs. Light and Heat Co.,* 409 Pa. 68, 73, 185 A.2d 573, 575 (1962). "To ascertain the nature of the easement created by an express grant we determine the intention of the parties ascertained from the language of the instrument. Such intention is determined by a fair interpretation and construction of the grant and may be shown by the words employed construed with reference to the attending circumstances known to the parties at the time the grant was made." *Id.*

¶ 12 Ambiguous words are construed in favor of the grantee. *Id.* "Where a deed or agreement or reservation therein is obscure or ambiguous, the intention of the parties is to be ascertained in each instance not only from the language of the entire written instrument in question, but also from a consideration of the subject matter and of the surrounding circumstances." *Id.* 409 Pa. at 73, 185 A.2d at 576 (citation and quotation marks omitted).

¶ 13 In the case *sub judice,* the Right of Way Agreement does not specifically mention by which method, (surface mining or deep mining), the coal can be mined in the areas subject to the right of way; it merely grants "a right to mine." *See* 1935 Right of Way Agreement. Thus, in construing the deed, it is the intention of the parties at the time of the transaction that governs. *See Stewart v. Chernicky,* 439 Pa. 43, 49, 266 A.2d 259, 263 (1970). As the right of way agreement is ambiguous, we favor the construction of the agreement which makes it fair and rational, not the construction which makes it unusual or inequitable. *Id.,* 439 Pa. at 50, 266 A.2d at 263 (citing *Wilkes–Barre Twp. School District v. Corgan,* 403 Pa. 383, 386, 170 A.2d 97, 98 (1961)).

¶ 14 Two cases which addressed the issue of whether reservations reserved the right to strip mine are particularly helpful in construing the reservation at issue in this case: *Rochez Bros., Inc. v. Duricka,* 374 Pa. 262, 97 A.2d 825 (1953) and *Merrill, supra.*

¶ 15 In *Rochez,* an owner conveyed two tracts of farm land, but reserved the coal in the two tracts underlying the land. The first reservation stated, in pertinent part, the following:

> Together with the right to mine and carry away all of said coal, and with all the mining rights and privileges neces-

sary or convenient to such mining and removal, drainage and ventilating of the same, without support of the overlying strata, *and without liability for the injury to the said surface or to anything therein or thereon by reason of the mining and removal of all of said coal*....

*Rochez,* 374 Pa. at 264, 97 A.2d at 825. The second reservation stated, in pertinent part, that the owner reserved the "right to enter in, upon and under the lands ... for the purpose of ... mining." *Id.*

¶ 16 Some time after the conveyance, the coal owner sold the rights to the coal and the new owner sought to extract the coal by strip mining the property. Our Supreme Court decided whether the reservations permitted the coal owner to remove the coal by strip mining or whether only shaft mining was permitted. *Id.,* 374 Pa. at 265, 97 A.2d at 826.

¶ 17 The Court noted the destruction associated with strip mining and stated that

no landowner would lightly or casually grant strip mining rights, nor would any purchaser of land treat lightly any reservation of mining rights which would permit the grantor or his assignee to come upon his land and turn it into a battleground with strip mining.

*Id.,* 374 Pa. at 266, 97 A.2d at 826. The Court also observed that in the second reservation, what was granted was the "right to enter in, upon and **under** the lands ... for the purpose of ... mining" and held that such language does not grant the right to remove the overlying surface. *Id.* (emphasis in original). The language in the reservation granting immunity from liability for "damages to the surface ... or the failure to provide support for the overlying strata" would make no sense if strip mining was intended, the Court found, as "strip mining encompasses the very tearing away of the overlying

strata." *Id.* The Court further found that the phrase in the reservation, "draining and ventilating of the same" refers to shaft mining as ventilation is not needed in strip mining. *Id.* Importantly, the Court held that the phrase "without being required to provide support of the overlying strata" pertains to shaft mining "because in strip mining the excavation is precisely of the overlying strata." *Id.,* 374 Pa. at 266–267, 97 A.2d at 826.

¶ 18 The coal owner argued that as the mining rights were reserved in 1919 the parties must have accepted strip mining, as it was a common practice in the area at that time. The Court rejected this argument, stating,

man being a reasonable animal we must assume that if they intended to speak about **strip mining** they would not use language which applies peculiarly to **underground** mining .... The whole nomenclature employed in the reservations ... applied to deep mining and not surface mining.

*Id.,* 374 Pa. at 268–269, 97 A.2d at 827 (emphasis in original).

¶ 19 In *Merrill, supra,* a company obtained from the coal and surface owners a right of way for the construction and maintenance of its pipelines which transmitted natural gas. Included in the easement granting the right of way, however, was a release for the owners of the coal and surface for damages to the pipelines caused by "the removal of the surface support thereunder" in connection with the mining of coal. *Merrill,* 409 Pa. at 71, 185 A.2d at 574–575. Years after the granting of the easement, the owners of the coal and surface informed the company that they intended to strip mine the area along the right of way. *Id.,* 409 Pa. at 71, 185 A.2d at 575. The strip mining could not be accomplished without the removal of the company's pipeline, and thus, disrupting

the company's transmission of natural gas to its customers. *Id.*, 409 Pa. at 72, 185 A.2d at 575. The Supreme Court interpreted the phrase "the removal of the surface support thereunder" and examined the attending circumstances at the time the right of way was entered into and held that strip mining could not take place within areas subject to the right of way.

¶ 20 The Court noted that the "surface" includes "whatever earth, soil or land which lies above and is superincumbent upon the coal." *Id.*, 409 Pa. at 75, 185 A.2d at 576 (citation omitted). Thus, the Court reasoned that the "removal of surface support" refers to "the removal of that subterranean geological matter which supports the 'earth, soil or land' ...." *Id.* Significantly, the Court noted that "**surface support** is not synonymous with **surface destruction** which as a matter of course accompanies strip mining," *id.*, 409 Pa. at 75, 185 A.2d at 577 (emphasis in original), and held that "'the removal of surface support', in common vernacular, refers to deep mining ...." *Id.*, 409 Pa. at 77, 185 A.2d at 577. The Court found further validation for its interpretation in the word "thereunder," as the word reinforced the Court's conclusion that the parties only contemplated deep mining. *Id.*

¶ 21 With the instruction and guidance on mining language provided by our Supreme Court in *Rochez* and *Merrill,* we can now interpret the 1935 Right of Way Agreement entered into between the parties in the matter presently before us.

■■■ ¶ 22 Our review of the 1935 Right of Way Agreement reveals that it uses language that is only applicable to deep mining. "The right to mine and remove coal by deeds conveying land in language peculiarly applicable to underground mining does not include the right to remove such coal by strip mining methods." *Stewart,* 439 Pa. at 52, 266 A.2d at

264 (citing *Rochez, supra*). As noted, the 1935 Right of Way Agreement provides Amerikohl with "the free and uninterrupted right to mine and remove the coal **underlying** said lands **without being required to provide or leave support for the overlying strata or surface** ...." *See* 1935 Right of Way Agreement (emphasis added). Amerikohl's right to mine coal "underlying" the land subject to the right of way is extremely similar to the language in *Rochez* which granted the "right to enter ... **under** the lands ... for the purpose ... of mining." *Rochez,* 374 Pa. at 266, 97 A.2d at 826 (emphasis in original). As stated previously, such "phraseology contains no right to remove the overlying surface." *Id.*

¶ 23 Moreover, the language in the Right of Way Agreement that states that coal can be mined "without being required to provide or leave support for the overlying strata or surface" is virtually indistinguishable from the language in *Rochez* which stated that coal could be mined "without being required to provide for the support of the overlying strata." *Id.* As our Supreme Court noted, such language "definitely refers to shaft mining because in strip mining the excavation is precisely of the 'overlying strata.'" *Id.*, 374 Pa. at 266–267, 97 A.2d at 826. Further, Stilley confirmed that during strip mining the overlying strata is excavated, as he testified that the overlying strata is removed. N.T., 5/20/02, at 17; *see also, Merrill,* 409 Pa. at 75, 185 A.2d at 577 ("surface support is not synonymous with surface destruction which as a matter of law accompanies strip mining") (emphasis omitted).

¶ 24 Our conclusion that the language in the reservation in this case refers only to deep mining is further supported when one compares the language to cases which have held that the right to strip mine is permitted. *See Commonwealth v. Fisher,*

364 Pa. 422, 424, 72 A.2d 568, 569 (1950) (strip mining allowed where reservation reserved the right to "search for and excavate any and every kind of ore mineral metal or coal and to dig excavate or penetrate any part of the said premises . . . .")[5]; *Mt. Carmel Railroad Co. v. M.A. Hanna Co.*, 371 Pa. 232, 237, 89 A.2d 508, 510 (1952) (holding strip mining permitted where reservation authorized "the full and free right of digging for, mining and taking away the same . . . in any manner or by any method of mining, without let or hindrance . . . ."); *Commonwealth v. Fitzmartin*, 376 Pa. 390, 392, 102 A.2d 893, 894 (1954) (finding right to strip mine where reservation reserved "all the coal, oil, natural gas, and other minerals, in and under the surface of said land; . . . to build and construct shafts, drifts, air shafts, bore holes, gangways, headings, roads and drains in, through, upon and under said surface; . . . without any liability whatsoever for damages to said lands . . . ."); *Heidt v. Aughenbaugh Coal Co.*, 406 Pa. 188, 193, 176 A.2d 400, 402 (1962) (holding that there was a right to strip mine where reservation expressly mentioned "the right to strip the surface"); *Clearfield Bank & Trust Co. v. Shaffer*, 381 Pa.Super. 259, 553 A.2d 455, 457 (1989) (finding deed reserved right to strip mine where reservation expressly noted strip mining). The language used in the above-cited cases brings into sharp contrast the language used in the 1935 Right of Way Agreement.

¶ 25 The circumstances attending the execution of the Right of Way Agreement also indicate that only deep mining was contemplated. As the trial court found, Peoples' pipeline on Huskins Run in 1935 served a busy company town. *See* Trial Court Opinion, 12/31/02, at 4. This pipeline was not designed to be taken out of service. *Id.; see also*, N.T., 5/20/02, at 151–154. In addition, Peoples had other pipelines on Helvetia land in Cowanshannock Township. Strip mining would have assured the destruction of Peoples' pipelines. It must be remembered that "[s]haft mining does a minimum of damage to the outer crust of the earth; strip mining does a maximum of damage." *Rochez*, 374 Pa. at 265, 97 A.2d at 826. We simply cannot agree with Amerikohl that based on these circumstances the parties contemplated strip mining. As we find that strip mining was not contemplated, Amerikohl's assertion that Peoples agreed to move its pipelines, or pay for damages because it would not move them, is untenable. As the trial court aptly noted, "we do not find that it would have been rational for Peoples to promise to remove a major pipeline (which was not designed to be taken out of service) to allow for surface mining or, in the alternative, promise to pay for damages for refusal to do so." Trial Court Opinion, 12/31/02, at 10–11.

¶ 26 In conclusion, considering the language used in the 1935 Right of Way Agreement, and in light of the surrounding circumstances, the only proper and rational construction of the agreement is that the parties did not envision surface mining within areas subject to the right of way.

¶ 27 Judgment affirmed.

---

**5.** As explained in *Rochez*, which also distinguished *Fisher*, "[t]o excavate means to make a hole or cavity in, hollow out, scoop, dig or cut a hollow in, which is precisely what strip mining does. Shaft or underground mining does not embrace the concept of excavating." *Rochez*, 374 Pa. at 267, 97 A.2d at 827.