J. A25034/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| RICHARD COLUCCIO, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| MICHAEL KARP, JAMES D'ANGELO, JR., | : | |
| AND D'ANGELO INVESTMENT GROUP, | : | |
| LLC, | : | |
| | : | |
| | : | No. 388 EDA 2015 |

Appeal from the Judgment January 21, 2015
In the Court of Common Pleas of Bucks County
Civil Division No(s).: 2011-06293

BEFORE: DONOHUE, MUNDY, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED NOVEMBER 24, 2015**

Appellant, Richard Coluccio, appeals from the judgment entered in the Bucks County Court of Common Pleas following a bench trial and verdict in favor of Appellees, Michael Karp and D'Angelo Investment Group, LLC ("DIG").[1]  Appellant raises twelve claims of error in this breach of contract suit.  We affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] Appellee James D'Angelo, Jr., consented to entry of default judgment against him.  Appellant's counsel appears to have represented D'Angelo's father in a lawsuit involving an allegedly fraudulent mortgage note signed by D'Angelo.  ***See generally In re D'Angelo***, 479 B.R. 649 (Bankr. E.D. Pa. 2012).

We adopt the trial court's findings of fact. *See* Trial Ct. Op., 12/26/14, at 1-11. New Jersey law governs the interpretation of this contract,[2] R.R. at 43a,[3] and the contract includes an integration clause:[4]

> This Agreement . . . contains the entire agreement between the parties hereto with respect to the Company. No variations, modifications or changes herein nor any waiver of any provision hereof shall be binding unless set forth in a document duly executed by or on behalf of each of the Members.

*Id.* at 42a. The disputed contract provision follows:

> Payment to [Appellant] by September 14, 2005 of $950,000 as final and full payment for any and all interest in claims in the Premises or the Company. [Appellant] hereby covenants and agrees to sell and release his interests in the Premises and the Company in exchange for such sum, and shall execute such release and transfer documentation as the Company shall reasonably request. Upon receipt of the aforesaid payment, [Appellant] shall have no further ownership interest in or claims against either the Premises or the Company.

*Id.* at 27a.

We add that Appellant did not raise a claim for fraud or piercing the corporate veil. Appellant also did not object to Karp's testimony regarding

---

[2] The agreement provided that any New Jersey conflict-of-law provisions that result in the application of non-New Jersey law would not apply.

[3] For ease of disposition, we cite to the reproduced record.

[4] "The essence of voluntary integration is the intentional reduction of the act to a single memorial; and where such is the case the law deems the writing to be the sole and indisputable repository of the intention of the parties." *Harker v. McKissock*, 96 A.2d 660, 665 (N.J. 1953) (citations omitted).

his routine business practice for wire transfers. Karp moved for default judgment against DIG and D'Angelo; Appellant never moved for default judgment against DIG. Following a bench trial and a verdict in favor of Appellees, Appellant filed a post-trial motion requesting either a new trial or the court to modify its verdict to hold Appellees liable.[5]  ***See*** Appellant's Mot. for Post Trial Relief, 1/5/15, at 27; Appellant's Supp. to Mot. for Post Trial Relief, 1/9/15, at 27.  Following entry of judgment, Appellant timely appealed.  Appellant timely filed a court-ordered Pa.R.A.P. 1925(b) statement raising twenty issues.

In his appellate brief, Appellant raises the following twelve[6] issues:

---

[5] Essentially, in this case, judgment notwithstanding the verdict.

[6] We endorse the following:

> With a decade and a half of federal appellate court experience behind me, I can say that even when we reverse a trial court it is rare that a brief successfully demonstrates that the trial court committed more than one or two reversible errors.  I have said in open court that when I read an appellant's brief that contains ten or twelve points, a presumption arises that there is no merit to any of them.  I do not say that this is an irrebuttable presumption, but it is a presumption nevertheless that reduces the effectiveness of appellate advocacy.  Appellate advocacy is measured by effectiveness, not loquaciousness.

***Andaloro v. Armstrong World Indus., Inc.***, 799 A.2d 71, 83-84 (Pa. Super. 2002) (quoting Ruggero J. Aldisert, The Appellate Bar: Professional Competence and Professional Responsibility—A View from the Jaundiced Eye of One Appellate Judge, 11 Cap. U. L. Rev. 445, 458 (1982)); ***accord Commonwealth v. Ellis***, 626 A.2d 1137, 1140 (Pa. 1993) ("[T]he number

1. Did Karp breach the Contract by disregarding the one sure way to make payment according to the Contract, that is, by mailing or delivering a check to "Richard Coluccio . . . at 5296 Moyer Road, Pipersville, PA 18947"?

2. Should the trial court have applied the doctrine of contra proferentum to construe the terms and conditions of the contract against the draftor . . . Karp?

3. Did the trial court erroneously find that the Contract did not require any direct payment obligation from Karp personally to [Appellant]?

4. Is the court's finding "that the Joint Account owned by Sheridan, D'Angelo, and [Appellant] received a payment of $950,000 . . . as required by the Amended Agreement" clearly erroneous as a matter of fact and law?

5. Was it an error of law and an abuse of discretion for the trial court to allow [Appellees] to present facts contrary to his "Joinder Complaint" in which [Appellees] plead [sic] "assuming Plaintiff was not paid, D[IG] is responsible for payment to Mr. Coluccio . . . [Appellant's] relief for not being paid the $950,000.00 is in the form of his interest in [DIG]"?

6. Was it an error of law and an abuse of discretion for the trial court to find in favor of the unrepresented LLC, namely DIG, who failed to enter an appearance throughout the litigation, failed to appear at trial, and failed to answer [Appellees'] joinder complaint or motion for default judgment?

7. Did Karp's disregard of virtually all New Jersey Limited Liability Act provisions referenced in the Contract he wrote "acknowledged, affirmed and ratified in all respects" allow [Appellant] to pierce the corporate/LLC veil under New Jersey law?

---

of claims raised in an appeal is usually in inverse proportion to their merit and that a large number of claims raises the presumption that all are invalid.").

8. Is the court's finding of an unwritten "side deal" based on competent evidence?

9. Does a written contract render irrelevant as a matter of law the court's finding that [Appellant] the damaged party was burdened to prove that "a wire transfer was not the common practice in the industry"?

10. Was the trial court's sua sponte imposition of the "adverse interest exception" defense into this case in favor of defendants [sic] Karp and the absent DIG an error of law and abuse of discretion, particularly since Karp or the absent DIG did not raise it themselves, even if it was applicable?

11. Is the trial court's finding that "D'Angelo [was] an agent of DIG, [but] was not acting in DIG's interest when he and Sheridan, his agent, removed $944,983.38 of the $950,000 from the Joint Account of [Appellant], Sheridan, and D'Angelo [(and deposited $500,000 of it back into a DIG account)] clearly erroneous as a matter of fact and law?[7]

12. Was the denial of [Appellant's] March 1, 2013 Motion to Compel 2005-2006 tax returns during the pretrial discovery process an error of law and abuse of discretion that deprived [him] of a fair trial?

Appellant's Brief at 20-23 (reordered and renumbered to facilitate disposition).[8]

---

[7] Alterations in original.

[8] Appellant, although raising twelve issues, presents only seven arguments in his appellate brief, thus violating Pa.R.A.P. 2119(a), which mandates that "argument shall be divided into as many parts as there are questions to be argued." **See** Pa.R.A.P. 2119(a). We decline to quash. **See PHH Mortg. Corp. v. Powell**, 100 A.3d 611, 615 (Pa. Super. 2014) (refusing to quash appeal despite numerous violations of appellate briefing rules); **see also Commonwealth v. Briggs**, 12 A.3d 291, 343 (Pa. 2011) ("The briefing requirements scrupulously delineated in our appellate rules are not mere

We summarize Appellant's first and third arguments, both of which support his first four issues on appeal. Appellant notes that Karp paid the $950,000 to a joint account in the names of Appellant, D'Angelo, and a third party. *Id.* at 46. He suggests that New Jersey law[9] required that payment was due at his residence or place of business. *Id.* at 37, 45. Appellant, however, anticipates that Karp would argue the contract was "silent as to how [Appellant] was to be paid the $950,000." *Id.* at 46. He refers to a September 13, 2005 note[10] with the joint account number and his home address. *Id.* at 47. In Appellant's view, the note established Karp's intent to wire the money to a joint account and not inform him. *Id.* In conjunction with what he perceives was the parties' reasonable expectations regarding

_____

trifling matters of stylistic preference; rather, they represent a studied determination by our Court and its rules committee of the most efficacious manner by which appellate review may be conducted so that a litigant's right to judicial review as guaranteed by Article V, Section 9 of our Commonwealth's Constitution may be properly exercised."). We note Appellant initially certified his brief comprised 13,280 words. Appellant's Certification of Compliance, 5/11/15. In response to Appellees' motion to quash this appeal for a defective brief, Appellant averred his brief contained 13,447 words. Appellant's Resp. to Appellees' Mot. to Quash Appeal, 6/15/15, at 1 (unpaginated). Our own informal word count suggests Appellant's brief is 13,955 words long, which is under the 14,000 word limit set forth at Pa.R.A.P. 2135.

[9] Although Appellant appears to argue Pennsylvania law applies, *see* Appellant's Brief at 37, 45, the parties previously agreed New Jersey law governs the contract. *See* R.R. at 43a. Appellant has not argued, *e.g.*, that the choice-of-law provision is ambiguous.

[10] Appellant did not cite to the location in the record where this note could be located. We note the reproduced record alone is over a thousand pages.

method of payment, Appellant suggests the parties deliberately omitted the term from the agreement. *Id.*

Appellant alternatively contends that an ambiguity exists in the contract and that per the doctrine of *contra proferentum*, the contract should be construed against the drafter, who was Karp. *Id.* at 48-49. Appellant again observes that his address was listed on page one of the contract. He complains that the court, by holding Karp complied with the contract, erred by making a better contract thus disregarding *contra proferentum*. *Id.* at 49.

In response, Karp alleges that Appellant raised *contra proferentum* for the first time in his Rule 1925(b) statement. Karp's Brief at 11. Regardless, Karp refers this Court to Appellant's testimony that Appellant never notified Karp or his agents to send the money to Appellant's home. *Id.* at 5 (citing N.T. Trial, 8/21/14, at 156). Karp cites Appellant's testimony that he never contacted Karp or his agents about not receiving the $950,000. *Id.* (citing N.T., 8/21/14, at 131-32; N.T., 8/22/14, at 57). According to Karp, Appellant contacted him in the summer of 2006 and verified that he did not have an ownership interest in the project. *Id.* (citing N.T., 8/25/14, at 114-15). After careful consideration, we hold Appellant is not entitled to relief.

The standard of review follows:

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the

law.  The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury.  We consider the evidence in a light most favorable to the verdict winner.  We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law.

***Amerikohl Mining Co. v. Peoples Natural Gas Co.***, 860 A.2d 547, 549-50 (Pa. Super. 2004) (internal quotation marks and citations omitted).  "The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case."  ***Wilson v. Transp. Ins. Co.***, 889 A.2d 563, 568 (Pa. Super. 2005) (internal quotation marks and citation omitted).

The following also illuminates this Court's standard and scope of review from an order resolving a post-trial motion:

> An appellate court will reverse a trial court's grant or denial of a JNOV only when the appellate court finds an abuse of discretion or an error of law.  Our scope of review with respect to whether judgment n.o.v. is appropriate is plenary, as with any review of questions of law.
>
> In reviewing a motion for judgment n.o.v., the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor.  Moreover, a judgment n.o.v. should only be entered in a clear case and any doubts must be resolved in favor of the verdict winner.  Further, a judge's appraisement of evidence is not to be based on how he would have voted had he been a member of the jury, but on the facts as they come through the sieve of the [fact-finder's] deliberations.

There are two bases upon which a judgment n.o.v. can be entered: one, the movant is entitled to judgment as a matter of law, and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first a court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

Questions of credibility and conflicts in the evidence are for the fact-finder to resolve and the reviewing court should not reweigh the evidence. If there is any basis upon which the fact-finder could have properly made its award, the denial of the motion for judgment n.o.v. must be affirmed.

**Braun v. Wal-Mart Stores, Inc.**, 24 A.3d 875, 890-91 (Pa. Super. 2011)

(*per curiam*) (internal brackets, ellipses, and citations omitted).

In reviewing a trial court's denial of a motion for a new trial, the standard of review for an appellate court is as follows:

It is well-established law that, absent a clear abuse of discretion by the trial court, appellate courts must not interfere with the trial court's authority to grant or deny a new trial.

Thus, when analyzing a decision by a trial court to grant or deny a new trial, the proper standard of review, ultimately, is whether the trial court abused its discretion.

Moreover, our review must be tailored to a well-settled, two-part analysis:

> We must review the court's alleged mistake and determine whether the court erred and, if so, whether the error resulted in prejudice necessitating a new trial. If the alleged mistake concerned an error of law, we will scrutinize for legal error. Once we determine whether an error occurred, we must then determine whether the trial court abused its discretion in ruling on the request for a new trial.

***Gurley v. Janssen Pharms., Inc.***, 113 A.3d 283, 288-89 (Pa. Super. 2015) (internal alterations, brackets, and citations omitted). We add that "[f]ailure to preserve [an issue] in a post-trial motion results in a waiver of that issue on appeal." ***Nogowski v. Alemo-Hammad***, 691 A.2d 950, 955 (Pa. Super. 1997) (citation omitted).

As noted above, New Jersey law governs the interpretation of the instant contract:

> The polestar of construction is the intention of the parties to the contract as disclosed by the language used, taken as an entirety; and, in the quest for the intention, the situation of the parties, the attendant circumstances, and the objects they were thereby striving to attain are to be regarded. Even when the contract on its face is free from ambiguity, evidence of the situation of the parties and the surrounding circumstances and conditions is admissible in aid of interpretation. The inquiry is the meaning of the words when assayed by the standard adopted by the law. On the theory that all language will bear some different meanings, **evidence of the circumstances is always admissible in the construction of integrated agreements**,[11] but not for the purpose of giving effect to

---

[11] If a contract contains an integration clause, "and it is not apparent from the writing itself that something is left out to be supplied by extrinsic evidence, parol evidence to vary or add to its terms is not admissible."

- 10 -

> an intent at variance with any meaning that can be attached to the words. This is a primary rule of interpretation which has special application where the meaning of the instrument is not clearly apparent. The admission of evidence of extrinsic facts is **not** for the purpose of changing the writing, but to secure light by which to measure its actual significance. Such evidence is adducible only for the purpose of interpreting the writing- not for the purpose of modifying or enlarging or curtailing its terms, but to aid in determining the meaning of what has been said. **So far as the evidence tends to show not the meaning of the writing, but an intention wholly unexpressed in the writing, it is irrelevant.** And the general design of the agreement is to be kept in view in ascertaining the sense of particular terms. In short, we are to consider what was written in the light of the circumstances under which it was written, and give to the language a rational meaning consistent with the expressed general purpose.

*Casriel v. King*, 65 A.2d 514, 516-17 (N.J. 1949) (emphases added and citations omitted); *accord Conway v. 287 Corp. Ctr. Assocs.*, 901 A.2d 341, 347 (N.J. 2006) ("Semantics cannot be allowed to twist and distort the words' obvious meaning in the minds of the parties." (quotation marks and citation omitted)); *Jacobs v. Great Pac. Century Corp.*, 518 A.2d 223 (N.J. 1986).[12]

---

*Schlossman's, Inc. v. Radcliffe*, 70 A.2d 493, 495 (N.J. 1950) (citations omitted).

[12] *Contra Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001) ("Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties." (citation omitted)).

The **Conway** Court concisely explained the role of parol evidence in a fully integrated agreement:

> In sum, we permit a broad use of extrinsic evidence to achieve the ultimate goal of discovering the intent of the parties. Extrinsic evidence may be used to uncover the true meaning of contractual terms. It is only after the meaning of the contract is discerned that the parol evidence rule comes into play to prohibit the introduction of extrinsic evidence to vary the terms of the contract.

**Conway**, 901 A.2d at 347; **Schlossman's**, 70 A.2d at 495. "Where an ambiguity appears in a written agreement, the writing is to be strictly construed against the draftsman," *i.e.*, *contra proferentum*. **In re Miller's Estate**, 447 A.2d 549, 555 (N.J. 1982).

To the extent that contract terms may be implied:

> Some principles have been utilized to define those implications. Thus we have held that terms will be implied in a contract where the parties must have intended them because they are necessary to give business efficacy to the contract as written. Moreover, in every contract there is an implied covenant of good faith and fair dealing. As a corollary to that proposition it is certainly reasonable to imply that neither party to a contract shall injure the right of the other to receive the fruits of the agreement.
>
> There are also some situations in which a condition will be implied on grounds of fairness and justice. . . .
>
>> Where fairness and justice require, even though the parties to a contract have not expressed an intention in specific language, the courts may impose a constructive condition to accomplish such a result when it is apparent that is necessarily involved in the contractual relationship.

The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal. It takes a broader view today. A promise may be lacking, and yet the whole writing may be instinct with an obligation, imperfectly expressed . . . .

In determining under contract law, what covenants are implied, the object which the parties had in view and intended to be accomplished, is of primary importance. The subject matter and circumstances of the [contracting] give at least as clear a clue to the natural intentions of the parties as do the written words. It is of course not the province of the court to make a new contract or to supply any material stipulations or conditions which contravene the agreements of the parties. Terms are to be implied not because

they are just or reasonable, but rather for the reason that the parties must have intended them and have only failed to express them . . . or because they are necessary to give business efficacy to the contract as written, or to give the contract the effect which the parties, as fair and reasonable men, presumably would have agreed on if, having in mind the possibility of the situation which has arisen, they contracted expressly in reference thereto.

*Onderdonk v. Presbyterian Homes of N.J.*, 425 A.2d 1057, 1062-63 (N.J. 1981) (citations, alteration, and internal quotation marks omitted).

Instantly, although the contract contains an integration clause, we may consider extrinsic evidence to the extent it aids interpretation of the terms of the contract. *See Casriel*, 65 A.2d at 516-17; *see also Schlossman's*, 70 A.2d at 495. Appellant, however, has not identified any

contract term regarding method of payment. Appellant has also not identified or referred this Court to any **extrinsic** evidence tending to establish an **existing** contract term's significance with respect to payment method.[13] *See Casriel*, 65 A.2d at 516-17.

Appellant has referred this Court to an alleged note[14] purporting to establish Karp's intent to wire the money to a joint account. Such evidence, however, does not clarify the meaning of an existing contract term but establishes "an intention wholly unexpressed" in the contract, *i.e.*, method of payment. *See id.*; *accord Conway*, 901 A.2d at 347 (holding extrinsic evidence cannot vary terms of contract). Thus, the alleged note is irrelevant as it does not pertain to an existing contract term. *See Casriel*, 65 A.2d at 516-17. With respect to Appellant's *contra proferentum* argument, he waived it on appeal by not preserving the issue in his post-trial motion. *See Nogowski*, 691 A.2d at 955. Regardless, on the merits, because Appellant cannot identify any ambiguity in an existing contract term, *contra proferentum* does not apply. *See In re Miller's Estate*, 447 A.2d at 555.

Appellant also argued that the court should impute into the contract a term alleged required by New Jersey law: payment was due via check at his

---

[13] The agreement preamble stating Appellant's address is not extrinsic evidence.

[14] As noted above, Appellant did not identify where in the extensive record this note could be found.

Pennsylvania home/business address. Appellant, however, has not referenced any evidence that such a term was both obvious and material to effectuating the agreement's purpose. *See Onderdonk*, 425 A.2d at 1062. The agreement, as a whole, does not imperfectly express an obligation that payment must be sent via check to Appellant's address. *See id.* While we agree it is reasonable to imply that Karp would not "injure the right" of Appellant to receive $950,000, Karp actually paid the $950,000. *See id.* But as Karp observed, Appellant did not even follow up with Karp about not receiving the $950,000, let alone at his home via check. *See* Karp's Brief at 5 (citing trial testimony). This tends to suggest that such a term was not obvious, let alone material, to executing the agreement. *See Onderdonk*, 425 A.2d at 1062. After careful consideration of the record in Karp's favor, we do not discern trial court error. *See Amerikohl*, 860 A.2d at 549-50.

Appellant's second and fifth arguments pertain to his fifth, sixth, seventh, and eighth issues on appeal. Appellant argues that because the court entered default judgment against D'Angelo, it should also have entered a default judgment against DIG. Appellant's Brief at 52. He faults the trial court for permitting trial to continue against DIG. Appellant alleges that DIG and Karp are identical and he should have been allowed to "pierce the corporate veil." *Id.* at 60. He also contends the court improperly considered parol evidence of an alleged "side deal." *Id.* at 62. In support of his arguments, Appellant cites to two unreported appellate decisions. *Id.* at

53 (citing **Straban Twp. v. Hanoverian Trust**, 708 C.D. 2014, 2015 WL 5432435, *3 (Pa. Cmwlth. Apr. 22, 2015) (holding "corporation may appear in court proceedings only by counsel.")), 60 (citing **Magna Fabrics, Inc. v. N.Y. Art & Shipping, LLC**, No. A-5322-11T3, 2013 N.J. Super. Unpub. LEXIS 2016 (N.J. Super. Ct. App. Div. Aug. 8, 2013) (quoting jury instruction stating shareholder of LLC may be liable for LLC's debts)).

Karp counters that Appellant failed to cite any applicable legal authority. Regardless, Karp points out that Appellant did not move for a default judgment against DIG. He claims that DIG's failure to appear did not bar the trial court from entering judgment—whether favorable or unfavorable. Karp's Brief at 15-16. In reply, Appellant maintains that DIG's failure to appear resulted in a "free pass" that deprived him of the judgment that was also awarded against D'Angelo. We hold Appellant has waived entitlement to relief.

"It is the appellant who has the burden of establishing his entitlement to relief by showing that the ruling of the trial court is erroneous under the evidence or the law. Where the appellant has failed to cite any authority in support of a contention, the claim is waived." **Bunt v. Pension Mortg. Assocs., Inc.**, 666 A.2d 1091, 1095 (Pa. Super. 1995) (citations omitted); **accord Moranko v. Downs Racing LP**, 118 A.3d 1111, 1117 n.3 (Pa. Super. 2015) (*en banc*). Appellant, however, cites to an unreported Commonwealth Court decision that stands for the proposition that a

- 16 -

corporation may not appear in court without counsel. Appellant similarly cites to an unreported New Jersey appellate court decision, which quoted a jury instruction stating that an LLC's shareholder could be liable for an LLC's debts. Appellant provides no legal analysis, let alone binding precedential authority, explaining why the court erred and why he is entitled to have D'Angelo's judgment apply to DIG, and thus, he has waived this argument in support of his two issues. *See Bunt*, 666 A.2d at 1095.[15] Even if Appellant had supported his claims, we note that Appellant did not move for a default judgment against DIG and never raised a claim for fraud, let alone piercing the corporate veil.

Appellant's fourth argument is in support of his ninth issue. The court's forty-fifth finding of fact follows: "It is common practice in commercial business to wire transfer money." Trial Ct. Op., 12/26/14, at 9 (citing Karp's testimony). Appellant alleges the trial court erred with its forty-sixth finding of fact: "[Appellant] supplied no testimony to evidence that a wire transfer was not the common practice in the industry." *Id.* (citing entirety of Appellant's trial testimony). Based on this finding of fact, Appellant opines the court erred by requiring him to establish a wire transfer was not a common industry practice. Appellant's Brief at 58. He contends

---

[15] *See also In re D'Angelo*, 479 B.R. at 659 (stating "brief contains no viable legal argument" and employs "inflammatory language"), 660 (noting lack of citation to legal authority).

the agreement was not ambiguous because there was no contract term requiring a wire transfer. *Id.* at 59. Appellant thus reasons that because the relevant term did not exist, the trial court's scope was limited to only the integrated agreement. *Id.* He concludes that by requiring him to prove that a wire transfer was not a typical banking custom, the court erred. We hold Appellant is not entitled to relief.

As noted above, we ascertain whether "the findings of the trial court are supported by competent evidence." *Amerikohl*, 860 A.2d at 549-50. The standard of review for an evidentiary ruling follows:

> It is axiomatic that, in order to preserve an issue for review, litigants must make timely and specific objections during trial and raise the issue in post-trial motions. Granting or denying an untimely objection lies in the discretion of the trial court. Requiring a litigant to make a timely, specific objection during trial ensures that the trial court has a chance to correct alleged trial errors. We have stressed that waiver is indispensable to the orderly functioning of our judicial process and developed out of a sense of fairness to an opposing party and as a means of promoting jurisprudential efficiency by avoiding appellate court determinations of issues which the appealing party has failed to preserve.

*Harman v. Borah*, 756 A.2d 1116, 1124-25 (Pa. 2000) (internal quotation marks, brackets, and citations omitted).

After reviewing Appellant's trial testimony, we conclude the trial court accurately portrayed the absence of such testimony. *See Amerikohl*, 860 A.2d at 549-50. To the degree that Appellant seemingly argues that the trial court's finding of fact reflected an improper alteration of his burden of proof,

- 18 -

we need not resolve it. Appellant failed to object to Karp's testimony regarding his customary business practice with respect to wire transfers. *See* N.T., 8/25/14, at 73-181; *see also* Trial Ct. Op., 12/26/14, at 9. Because he failed to object, Appellant waived the issue on appeal. *See Harman*, 756 A.2d at 1124-25.

Regardless, evidence of whether a wire transfer is common banking practice is extrinsic evidence. *See Conway*, 901 A.2d at 347. Such evidence, therefore, can be used to discern "the true meaning of contractual terms." *See id.* Appellant, however, conceded there is "literally no ambiguous term pertaining to a wire transfer because a wire transfer is not stated in the writing." *See* Appellant's Brief at 59. *Contra id.* at 48-49 (arguing contract is ambiguous). Because there is no ambiguous term, Appellant agrees that such evidence cannot establish a wholly unexpressed contract term that payment was to be made via check to Appellant's home address. *See Conway*, 901 A.2d at 347.

For his sixth argument, which supports his tenth and eleventh issues, Appellant contends the court *sua sponte* invoked the "adverse interest exception" defense on behalf of Appellees. *See* Appellant's Brief at 63. He insists the defense applies only in fraud cases and thus cannot be raised in the instant breach-of-contract matter. Appellant, moreover, asserts that the court overlooked elements of the defense that are missing from the record.

Appellant thus opines the court erred by rendering the following conclusions of law:

> 24. D'Angelo, an agent of DIG, was not acting in DIG's interest when he and Sheridan, his agent, removed $944,983.38 of the $950,000 from the Joint Account of Coluccio, Sheridan, and D'Angelo.
>
> 25. D'Angelo, an agent of DIG, was not acting in DIG's interest when he failed to give Coluccio the full $950,000 to Coluccio as required by the Amended Agreement.
>
> 26. The Court finds that D'Angelo's conduct will not be imputed on DIG.

Trial Ct. Op., 12/26/14, at 14. Appellant is due no relief.

By way of background, "[t]he Latin phrase '*in pari delicto potior est conditio defendentis*,' *in pari delicto* for short, refers to the common law maxim that 'where the wrong of both parties is equal, the position of the defendant is the stronger.'" ***Bondi v. Citigroup, Inc.***, 32 A.3d 1158, 1174 (N.J. Super. Ct. App. Div. 2011) (citations omitted).

> Under New Jersey law, the party invoking the defense must establish that the party against whom the defense is asserted must have substantially equal responsibility for the underlying illegality to permit dismissal of claims asserted by the aggrieved party.
>
> An acknowledged exception to the imputation or *in pari delicto* doctrine is the adverse interest exception. Under this exception, the wrongs of an insider will not be imputed to the corporation, if the insider acted solely for his own benefit and adverse to the interest of the corporation.

***Id.*** at 1174-75 (internal quotation marks and citations omitted); ***accord***

***NCP Litig. Trust v. KPMG***, 945 A.2d 132, 146 (N.J. Super. Ct. App. Div.

- 20 -

2007). *In pari delicto* is axiomatically an affirmative defense, which concedes liability but otherwise excuses a defendant's actions. **See generally** Black's Law Dictionary 482 (9th ed. 2009) (defining affirmative defense as "A defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true.").

Instantly, we need not resolve whether the trial court properly invoked the affirmative defense for Appellees, as we have discerned no basis to reverse the trial court's rulings regarding Appellant's breach of contract claim. **See generally Bondi**, 32 A.3d at 1174-75. If the trial court had concluded that Appellees were liable for breach of contract, then Appellees could have invoked *in pari delicto*.[16] **See id.** Regardless, assuming the trial court erred, Appellant has not explained how the error was so prejudicial as to warrant judgment notwithstanding the verdict, let alone a new trial. **See Gurley**, 113 A.3d at 288-89; **Braun**, 24 A.3d at 890-91; **see also Yacoub v. Lehigh Valley Med. Assocs.**, 805 A.2d 579, 590-91 (Pa. Super. 2002) (*en banc*) (holding trial court erred by ruling plaintiff did not plead sufficient facts to establish ostensible agency theory of liability; error, however, was not prejudicial given record). Thus, even assuming trial court error,

---

[16] We need not identify the party against whom such a defense could be invoked or ascertain the likelihood of success.

Appellant has waived the argument due to insufficient legal analysis. *See*

*Bunt*, 666 A.2d at 1095.

Appellant's last argument pertains to the trial court's pretrial ruling denying his motion to compel discovery of Karp's 2005 and 2006 tax returns—his twelfth issue. He notes, however, that the trial court, mid-trial, ordered Karp to produce the tax returns. Appellant contends that notwithstanding the mid-trial order to compel, the earlier ruling established an abuse of discretion and error of law. Appellant also contends that Karp refused to comply with the order and thus denied him a fair trial. We hold Appellant has waived entitlement to relief. In support of his seven-page argument, Appellant cites only to Pa.R.C.P. 4003.1(a), which addresses the scope of discovery. Appellant cites no authority establishing the trial court abused its discretion. Accordingly, he has waived this argument. *See Bunt*, 666 A.2d at 1095. For these reasons, we affirm the judgment below.

Application to quash denied. Appellant's "Petition re Trial Court's 1925(a) Opinion" denied. Judgment affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/24/2015