J-S35001-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JEFFREY D. KLINE AND APRIL I. KLINE, HIS WIFE, AND TRI-VALLEY PHARMACY, INC., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | |
| v. | |
| LRZ, LTD., | |
| Appellant | No. 2003 MDA 2017 |

Appeal from the Judgment Entered January 26, 2018
In the Court of Common Pleas of Schuylkill County
Civil Division at No(s): S-2273-2015

BEFORE:  BENDER, P.J.E., PANELLA, J., and MURRAY, J.

MEMORANDUM BY BENDER, P.J.E.:              **FILED AUGUST 23, 2018**

Appellant, LRZ, Ltd. ("LRZ"), appeals from the judgment entered on January 26, 2018, in favor of Appellees, Jeffrey D. Kline and April I. Kline, his wife (collectively "the Klines"), and Tri-Valley Pharmacy, Inc. ("Tri-Valley").[1] We affirm.

_____

[1] LRZ appealed from the order denying its post-trial motions on November 21, 2017.  An order denying post-trial motions is interlocutory and generally not appealable.  ***See Johnston the Florist, Inc. v. TEDCO Const. Corp.***, 657 A.2d 511, 514 (Pa. Super. 1995).  However, since judgment was entered on January 26, 2018, we consider the appeal as taken from the entry of judgment, and have amended the caption accordingly.  ***See id.*** at 514-15 (stating that appellate courts may "regard as done that which ought to have been done") (citations omitted); ***see also Levitt v. Patrick***, 976 A.2d 581, 584 n.2 (Pa. Super. 2009) (stating that an appeal properly lies from the entry of judgment, not from the order denying post-trial motions) (citation omitted).

The trial court summarized the procedural history and factual background of this case as follows:

> [LRZ] filed an appeal from the judgment entered January 26, 2018. The underlying matter involved the request of the Appellees … for a determination of their right and entitlement to an easement or right-of-way over the neighboring LRZ property. LRZ filed a counterclaim that seeks the ejectment of [Appellees] from the easement area or, alternatively, requests … a determination as to the location, metes and bounds[,] and scope of any easement. A non-jury trial was held on May 10, 2017. Following trial, the parties submitted briefs and [] Appellees attached a survey map that showed the location of the easement. [The trial court] entered an [o]rder and [o]pinion dated July 3, 2017[,] determining the location of the easement and requiring [] Appellees to provide a metes and bounds description of the easement in accordance with [the] survey map attached to the [p]ost-trial brief. LRZ filed [p]ost-[t]rial [m]otions[,] which were denied by [o]rder dated November 21, 2017.[2] An [o]rder was entered by this [c]ourt on December 2[9], 2017, directing [LRZ] to concisely set forth the matters complained of on appeal pursuant to [Pa.R.A.P. 1925(b)]. On or about January 17, 2018, [LRZ] filed a [c]oncise [s]tatement of [m]atters [complained of on appeal.]

> The relevant facts are as follows. The Klines are the owners of the real estate located at 101 South Tulpehocken Street, Pine Grove, Pennsylvania, 17963 (hereinafter "Kline Premises"). The Kline Premises, which consists of two (2) adjoining parcels, was granted and conveyed to [the Klines] by [d]eed dated February 28, 2000, which [d]eed is recorded in the Recorder of Deeds of Schuylkill County, Pennsylvania, in Deed Book 833, at page 240.

> LRZ is the owner of the neighboring real estate located at 121 South Tulpehocken Street, Pine Grove, Pennsylvania 17963 (hereinafter "LRZ Premises"). Mark Frew is the president of

_____

[2] LRZ initially filed a notice of appeal on December 20, 2017. **See** Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.").

Nostalgic Diner Group, which is the general partner of LRZ.[3] The LRZ Premises was granted and conveyed to LRZ by [d]eed dated November 24, 2015, which deed is recorded in the Recorder of Deeds of Schuylkill County, Pennsylvania, in Deed Book 2549, at page 1124.

The Kline Premises and LRZ Premises are adjoining premises located in the Borough of Pine Grove. The Klines lease Kline Premises to Tri-Valley for the operation of Tri-Valley's commercial/retail pharmacy business (hereinafter "Business"), with Kline Premises containing a structure in which Tri-Valley conducts Business.

The Kline Premises and LRZ Premises have a common grantor, Stephen Ninkovich and Phyllis Ninkovich (hereinafter "Ninkovich"). Ninkovich became the common owner of both [the] Kline Premises and LRZ Premises by [d]eed dated March 31, 1959, which [d]eed is recorded in the Recorder of Deeds of Schuylkill County, Pennsylvania in Deed Book 977, at page 228. Thereafter, on March 19, 1965, Ninkovich transferred Kline Premises to Acme Markets (hereinafter "Acme") by [d]eed dated March 19, 1965, which [d]eed is recorded in the Recorder of Deeds of Schuylkill County in Deed Book 1064, at page 275 (hereinafter "Acme Deed").

The Acme Deed granted a right-of-way to Acme, its successors and assigns, its and their tenants and under[tenants], and occupiers and possessors, across the rear of LRZ Premises for the free ingress, egress and regress of said parties (hereinafter "Acme Easement"); said Acme Easement being more specifically detailed as follows:

> TOGETHER with the free and uninterrupted right, use, liberty and privilege of and passage in and along a driveway 20' wide, running from the property being conveyed hereby, across other property of Stephen Ninkovich and Phyllis Ninkovich, his wife, in a Southerly direction to Spruce

---

[3] We acknowledge a minor ambiguity in the record. The trial court refers to Mark Frew as the president of Nostalgic Diner Group. However, at trial, David Stuart Frew testified that he serves as the president of Nostalgic Diner Group. N.T. Trial, 5/10/2017, at 105-06.

Street,[4] said driveway to be located as required by Acme Markets, Inc., provided no part[] of the same shall be more than 75' West of the boundary line between such other property of Stephen Ninkovich and Phyllis Ninkovich, his wife, and [the] right-of-way of Reading Company, formerly the Schuylkill-Susquehanna Railroad, lying to the East of such other property to Stephen Ninkovich and Phyllis Ninkovich, his wife.

TOGETHER with the free ingress, egress and regress to and for the said Acme Markets, Inc., its successors and assigns, its and their tenants and undertenants, occupiers or possessors of the premises of the said Acme Markets, Inc., on the Easterly side of Tulpehocken Street, including any property contiguous thereto which may subsequently be acquired by Acme Markets, Inc., provided that all expenses of constructing and maintaining said driveway shall be paid by Acme Markets, Inc. and provided further that Stephen Ninkovich and Phyllis Ninkovich, his wife, shall have the right to enter upon said driveway for the purpose of access to its other lands, if any, between said driveway and said right-of-way of the Reading Company.

The "right-of-way of Reading Company, formerly the Schuylkill-Susquehanna Railroad" is now owned by the Borough of Pine Grove.

Acme conveyed the Kline Premises to Donald Brosious and Jean S. Brosious[,] his wife[,] by [d]eed dated May 16, 1969, which is recorded in the Recorder of Deeds of Schuylkill County, Pennsylvania in Deed Book 1110, at page 20. Mr. and Mrs. Brosious became a successor[] and assign[] to Acme and/or a rightful tenant, occupier and possessor, gaining the right to fully utilize Acme Easement when they owned the Kline Premises, which is the dominant tenement previously owned by Acme. From 1970 to 2000, Mr. and Mrs. Brosious operated a 5 & 10 variety store at the Kline [P]remises and their customers used the Acme [E]asement for means of ingress and egress to the property.

The Klines became a successor and assign to Acme, and/or a rightful tenant, occupier and possessor, gaining the right to fully utilize [the] Acme [E]asement as the current owners and

---

[4] Spruce Street is now called Snyder Avenue. *See, e.g.*, N.T. at 23, 92. Herein, we refer to it as "Spruce/Snyder Street."

occupiers of the Kline Premises, which is the dominant tenement previously owned by Acme. Said Acme Easement is a primary source of ingress and egress to [the] Kline[s], Tri-Valley, Business, and the customers, employees, licensees and invitees of [the] Kline[s], Tri-Valley, and Business. The customers, employees, licensees and invitees began using the Acme Easement immediately upon [the Klines'] purchase of [the] Kline [P]remises and the number of cars travelling this area has ranged from approximately 50 to 250 per day.

The Klines and Tri-Valley made certain changes to the exterior of the property, including the construction of a drive through window and filling and paving an employee parking lot at the LRZ boundary line. The presence of a telephone pole in the seventy-five (75') [foot] area would hinder the movement of large tractor trailer delivery trucks if the easement is relocated to the east as requested by LRZ.

The parties agreed that the language in the Acme [D]eed indicates that the driveway in question is twenty (20') feet wide and located no more than seventy-five (75') feet from the eastern boundary of the LRZ property. The Klines and Tri-Valley dropped their claim during trial for a larger prescriptive easement and accepted a twenty (20') foot easement in that area so long as it remains approximately in the location where they asserted that it has existed since at least 1975.[5] LRZ disputed that location and asserted that the language of the easement controls such that the easement should be located "as required by Acme Markets[."] LRZ asserted that Acme Markets used a portion of the easement closest to the boundary between the properties.

Trial Court Opinion ("TCO"), 2/14/2018, at 1-5 (unnecessary capitalization omitted).

---

[5] "A prescriptive easement is a right to use another's property which is not inconsistent with the owner's rights and which is acquired by a use that is open, notorious, and uninterrupted for a period of twenty-one (21) years." *Soderberg v. Weisel*, 687 A.2d 839, 842 (Pa. Super. 1997) (citation omitted). Further, "[a] prescriptive easement … differs markedly from an express grant easement, because the prescriptive easement is not fixed by agreement between the parties or their predecessors in interest." *Id.* at 843 n.3.

Ultimately, the trial court concluded that Appellees are entitled to an easement, and "[t]he location of the easement shall remain in the same location as [Appellees] have used since [the Klines] purchased the property which is set forth in the survey map attached to [their] post-trial brief…." Trial Court Order, 11/21/2017, at 1. In doing so, the trial court also denied LRZ's counterclaim request for ejectment. *Id.*

Presently, LRZ raises the following issues for our review:

A. Did the lower court err in finding and concluding that there was no evidence or basis on which to conclude where Acme … required the easement in question?

B. Did the lower court err in concluding that the use of the LRZ property by the Klines since the Klines acquired the Kline property is in the location set forth in the survey map attached to [the] Klines' post-trial brief?

C. Did the lower court err in failing to establish the location or even relocation of the easement in an area which serves the purposes of the Klines while not adversely affecting LRZ in the interests of justice, that is along the eastern boundary of the LRZ property?

LRZ's Brief at 3 (unnecessary capitalization omitted).[6]

At the outset, we acknowledge:

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, as the issue herein centers on the interpretation of an

_____

[6] We have reordered LRZ's issues for ease of disposition.

easement, which like any contract concerns a question of law, our scope of review is plenary.

***

The law on the interpretation of easements is clear. A right of way is an easement, which may be created by an express grant. To ascertain the nature of the easement created by an express grant we determine the intention of the parties ascertained from the language of the instrument. Such intention is determined by a fair interpretation and construction of the grant and may be shown by the words employed construed with reference to the attending circumstances known to the parties at the time the grant was made.

Ambiguous words are construed in favor of the grantee. Where a deed or agreement or reservation therein is obscure or ambiguous, the intention of the parties is to be ascertained in each instance not only from the language of the entire written instrument in question, but also from a consideration of the subject matter and of the surrounding circumstances.

*Amerikohl Mining Co., Inc. v. Peoples Natural Gas Co.*, 860 A.2d 547, 549-50 (Pa. Super. 2004) (internal citations and quotation marks omitted).

In LRZ's first issue, it argues that the trial court erred in finding and concluding that there was no evidence on which to determine where Acme required the easement in question. *See* LRZ's Brief at 14. LRZ asserts that the evidence demonstrated that the easement as required by Acme was located along the easternmost portion of LRZ's property. In support, it claims that the "only competent evidence" regarding Acme's location of the easement was the testimony of Charles Brosious, whose parents operated a 5 & 10 variety store at the Kline Premises for forty years prior to the Klines' acquiring the property. *Id.* at 15; *see also* N.T. at 85-86. According to LRZ, Mr. Brosious's testimony indicated that Acme used the easement to bring in freight

through a door at the northeast corner of the Klines' building, which suggests that Acme would have required an easement to run parallel and close to the eastern boundary of LRZ's property. **See** LRZ's Brief at 8, 15 (citations omitted). Further, LRZ contends that Mr. Brosious's testimony accords with the testimony of David Stuart Frew, who stated that traffic coming in a northern direction from Spruce/Snyder Street had the ability to go straight to Acme's freight door. **See id.** at 15 (citation omitted).[7]

The trial court found that the Acme Deed "allowed some flexibility in the location of the easement and did not precisely define its location. Acme did not take steps to permanently mark or define the easement during its ownership of the Kline Premises." TCO at 8 (unnecessary capitalization omitted). Based on our review of the record, we agree with the trial court that the location of the easement as required by Acme is not clear from the deed, nor had it been indelibly delineated by Acme. Further, we question LRZ's interpretation of Mr. Brosious's testimony regarding Acme's freight door. Mr. Brosious testified as follows:

---

[7] In the portions of the trial transcript cited by LRZ, Mr. Frew testified that, in the mid-1990s, the eastern forty feet of the Klines' property — including the area with Acme's freight door — was essentially level with the borough's property to the east as well as with LRZ's property out to Spruce/Snyder Street. N.T. at 110; **see also** LRZ's Brief at 15 (citing N.T. at 109-12). Additionally, he later testified — based on an aerial map from 1971, **see** N.T. at 115 — that a driveway had run from the south of LRZ's structure to the rear of the Brosiouses' building. **Id.** at 117.

[LRZ's attorney:] Okay.  Now, we noticed that in the rear of the property, your parents' property, the building, there was a door in the rear of the property roughly in the northeast corner.

[Mr. Brosious:] The basement.

[LRZ's attorney:] Yes.  What was that use[d] for?

[Mr. Brosious:] Acme used to bring in freight there.

[LRZ's attorney:] All right.  So when Acme came in, then, they would come straight across the rear property line of the LRZ property and your property and make the deliveries at that door; is that correct?

[Mr. Brosious:] I think they came off the borough property land and came back in because at the time that door was there.[8]  We never used it and they never [sic].  But I think they came off where the borough building is, that street.

[LRZ's attorney:] But that door, that's where Acme made the deliveries; is that correct?

[Mr. Brosious:] Yes.

N.T. at 101-02.  Thus, Mr. Brosious's testimony implies that Acme did not utilize LRZ's property at all in order to deliver freight to Acme's northeast rear door, but instead relied on the borough's property to the east to do so.  In addition, we agree with the trial court that the map relied on by Mr. Frew to establish that a driveway once existed from Spruce/Snyder Street to Acme's freight door is indecipherable.  *See* TCO at 7 ("[LRZ] presented an aerial map that was dated after Acme sold the property that was indecipherable to this [c]ourt and which we did not consider credible evidence.").  Accordingly, the

---

[8] The borough property, which was formerly railroad property, is located to the east of the properties owned by LRZ and the Klines.  ***See generally*** TCO at 3-4; ***see also*** N.T. at 58-59, 107-09.

evidence proffered by LRZ was insufficient to establish where Acme had required the easement in question.

Given the ambiguity of the deed and the lack of physical proof as to where Acme required the easement, we agree with the trial court that the subsequent, consistent use of the easement from the 1970s until present provides insight into what the original parties likely intended for the easement. As the trial court discerned, "[there is] no basis on which to conclude where Acme … required the easement; however, there was ample evidence as to the approximate location of the easement by Acme's successors and assigns for over forty years. There was no credible evidence that this location was different from the location of Acme's driveway." *See* Trial Court Opinion, 7/3/2017, at 9 (unnecessary capitalization omitted). We additionally note that Mr. and Mrs. Ninkovich, the original grantors of the easement to Acme, owned LRZ's property until August of 1974. N.T. at 11. Mr. Brosious's parents purchased the Kline premises from Acme in 1969, when Mr. Brosious was about six years old. *Id.* at 86 (stating that he was born in January of 1963). Mr. Brosious's first recollections of the property were when he was "8, 9 years old[,]" and he stated that he started working at his parents' store when he was about 10 years old. *Id.* at 86, 87. Mr. Brosious represented that the way in which Tri-Valley's customers enter and exit the Kline Premises does not significantly differ from how customers entered and exited his parents' store. *Id.* at 88-89. As such, it can be inferred that the original grantors, Mr. and Mrs. Ninkovich, did not object to how or where the easement was being used.

Further, when interpreting an easement, we "determine the intention of the parties ascertained from the language of the instrument[,]" and reiterate that "[a]mbiguous words are construed in favor of the grantee." **Amerikohl**, 860 A.2d at 550 (citations omitted). If the grantors had intended to limit Acme's twenty-foot wide easement to the easternmost portion of the seventy-five foot area so as to only provide Acme access to its freight door, they could have included that restriction or purpose in the deed. Consequently, we discern no error by the trial court in determining that the easement need not be located along the easternmost portion of LRZ's property.

Second, LRZ challenges the trial court's conclusion that "the use of the LRZ property by the Klines since the Klines acquired the Kline property is in the location set forth in the survey map attached to [Appellees'] post-trial brief." **See** LRZ's Brief at 9 (unnecessary emphasis and capitalization omitted). Specifically, LRZ claims that "[t]here was no evidence submitted by [Appellees] to establish the specific location of the twenty foot (20') wide easement at the location set forth in the survey map…." **Id.** at 14. Instead, LRZ asserts that "[t]he location of the easement as reflected on the survey map … is based strictly on the area identified by Mr. Kline as his **desired** location of the easement." **Id.** (emphasis in original). We disagree.

In ascertaining that the location of the easement should accord with the location in Appellees' survey map, the trial court explained that Appellees had "presented evidence during trial through testimony and exhibits as to the use of the easement between 1975 and present, which … clearly established that

the easement had existed in approximately the same location since 1975, although it may have shifted a few feet either way." TCO at 6. Indeed, Mr. Brosious testified:

> [Appellees' attorney:] Do those two photographs[9] in combination show different direction views of the travel area that you recall?
>
> [Mr. Brosious:] Correct.
>
> [Appellees' attorney:] From 1975 to 2000, was it that same travel area that was used by your parents' customers?
>
> [Mr. Brosious:] Yes.
>
> [Appellees' attorney:] Okay. There is -- on Exhibit No. 11[,] there is a dumpster; do you see that?
>
> [Mr. Brosious:] Yes.
>
> [Appellees' attorney:] And to the right of that, immediately to the right, is a telephone pole?
>
> [Mr. Brosious:] Correct.
>
> [Appellees' attorney:] Okay. Was that telephone pole there when your parents operated that property?
>
> [Mr. Brosious:] Yes.
>
> [Appellees' attorney:] Do you believe that telephone pole was there the entire time from 1975 to 2000?
>
> [Mr. Brosious:] Yes.
>
> [Appellees' attorney:] [D]id the travel area as shown on Exhibit 11, did the travel area always exit to the left of that telephone pole?
>
> [Mr. Brosious:] Yes.
>
> ***

---

[9] These photographs, which Mr. Kline said he had recently taken, show the travel area that has been used across LRZ's property. *See* N.T. at 20-21. The photographs were entered into evidence as Exhibits No. 10 and 11. *Id.*

[Appellees' attorney:] Do you recall the location of that travel area changing in any meaningful way over the 25 years from 1975 to 2000?

[Mr. Brosious:] No.

[Appellees' attorney:] Do you recall any periods of time where there wasn't daily customer traffic of [*sic*] your parents' store across that travel area from 1975 to 2000?

[Mr. Brosious:] No.

N.T. at 90-91, 92.  Further, Mr. Kline testified:

[Appellees' attorney:] [H]as that area of travel, has that changed in any way over the 15 years [since you owned the property]?

[Mr. Kline:] Not appreciably.

[Appellees' attorney:] What do you mean appreciably?

[Mr. Kline:] I mean it may have shifted by a couple feet here or there.  You know, there's a 20-foot wide easement, but typically people will use that whole area across the back there.

[Appellees' attorney:] [W]as there any efforts by you to change the location in any way?

[Mr. Kline:] Not [*sic*].

[Appellees' attorney:] Okay.  So it could have travelled a little but [*sic*] one direction or the other?

[Mr. Kline:] That's correct.

***Id.*** at 28.

Our review of the metes and bounds description and survey map submitted by Appellees coincides with the above-stated testimony.  ***See*** Metes and Bounds Description, 11/6/2017, at 2-3 (unnumbered pages).  The travel area begins on the side of the telephone pole closest to South Tulpehocken Street, and ends on Spruce/Snyder Street.  Thus, we reject LRZ's contention

that there was no evidence establishing the location of the easement as reflected in Appellees' survey map.

Finally, LRZ argues that the trial court "should have established the location of the easement in an area which serves the purposes of the Klines while not adversely affecting LRZ in the interests of justice, that is along the eastern boundary of … LRZ['s] property." LRZ's Brief at 16. In support, LRZ cites **Soderberg**, **supra**, which held that "Pennsylvania law permits a minor, safe relocation of **prescriptive easements** that does not unreasonably interfere with an easement holder's use and enjoyment." **Soderberg**, 687 A.2d at 843 (emphasis added). In the case *sub judice*, however, the trial court determined that Appellees had an express easement — not a prescriptive easement — over LRZ's property. **See** Trial Court Order, 11/21/2017, at 1 ("[Appellees] are entitled to an easement through the property of LRZ[,] Ltd. as set forth in the [d]eed…."); **see also** TCO at 6 ("[Appellees] dropped their request for a larger prescriptive easement after the trial was under way, leaving this [c]ourt to determine the location of the twenty (20') foot easement within the seventy-five (75') foot area on the LRZ property as set forth in the Acme Deed.") (unnecessary capitalization omitted). Thus, the holding in **Soderberg** appears inapplicable here.

In any event, though, we are not persuaded that the "interests of justice" support locating the easement on the eastern boundary of LRZ's property. To begin, Appellees point out — and the trial court found —that "the presence of a telephone pole in the seventy[-]five foot area would hinder the

movement of large tractor trailer delivery trucks [making deliveries to Tri-Valley] if the easement [were] relocated to the area requested by LRZ." Appellees' Brief at 13; ***accord*** TCO at 4-5, 6.  Appellees state it would be a "substantial burden" on them if the easement were relocated.  Appellees' Brief at 14.  In addition, the trial court aptly opined:

> LRZ purchased a property in 2015 subject to an easement that fifty (50) to two-hundred[-]and[-]fifty (250) vehicles travelled on every day.  The easement was located in approximately the same area for at least forty years before LRZ purchased the property.  LRZ had the opportunity to observe how and where the easement was located before it purchased the property.  [The trial court does] not believe that the evidence establishes that the interests of justice require moving the easement to the location that would allow LRZ the best use of its property under these circumstances.

TCO at 9.  We concur.  As such, no relief is due.

Judgment affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 08/23/2018

- 15 -