J-S32033-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ROBERT GARFIELD JONES, III AND OLIVIA CAROL JONES, TRUSTEES | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ROBERT G. JONES, JR. | : | |
| | : | No. 263 MDA 2025 |
| Appellant | : | |

Appeal from the Order Entered January 24, 2025
In the Court of Common Pleas of Lackawanna County Civil Division at
No(s): 2022 CV 0826

BEFORE:  LAZARUS, P.J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                **FILED: OCTOBER 24, 2025**

Appellant, Robert G. Jones, Jr., appeals from the order entered in the Court of Common Pleas of Lackawanna County denying the petition for contempt filed by Appellees Robert Garfield Jones, III and Olivia Carol Jones, Trustees (the "Jones Trustees"), and clarifying a prior order granting summary judgment in favor of the Jones Trustees upon which the contempt petition was based.  After our careful review, we affirm.

The relevant facts and procedural history have been set forth by the trial court, in relevant part, as follows:

> [O]n June 10, 1988, Marjorie R. Jones granted a written easement to Robert Garfield Jones, Jr., and his wife, Audrey C. Jones, which is recorded with the Lackawanna County Recorder of Deeds[.] [Appellees, the Jones Trustees,] are trustees under the

---

[*] Former Justice specially assigned to the Superior Court.

Irrevocable Deed of Trust of Robert Garfield Jones, Jr., and Audrey C. Jones, dated September 10, 2015, and the owners of land described in a deed from Robert Garfield Jones, Jr., and his wife, Audrey C. Jones, dated July 1, 2016,…including property located at [**45] Jones Drive, Springbrook Township [in Lackawanna County]. [Appellant] is the owner and resident of contiguous property situated at [**35] Jones Drive, Springbrook Township [in Lackawanna County]. [The Jones Trustees' property and Appellant's property are adjacent to each other.]

The easement dated June 10, 1988, states, in relevant part, that the grantor, Marjorie R. Jones:

> …has granted, bargained and sold, and by these presents does grant, bargain and sell unto the said Grantees, their heirs and assigns, the free and uninterrupted use, liberty and privilege of, and passage in and along a certain roadway, twenty feet in width extending along the easterly boundary of lands conveyed to the Grantor by deed of Henry R. Jones *et ux.* to Edgar E. Jones and Marjorie R. Jones, his wife, by deed dated March 9, 1955, and recorded in Lackawanna County in Deed Book [***] at Page [***].  The said Edgar E. Jones died May 27, 1959, and thus by operation of law title to the within premises vested in his wife, Marjorie R. Jones, the Grantor herein.  The said road is presently used by Camp Bow Back Hunting Club as an easement appearing in deed dated April 3, 1961, recorded in Lackawanna County Deed Book [***] at Page [***].
>
> TOGETHER, with free ingress, egress and regress to and for the said Grantees, their heirs and assigns, their tenants and undertenants, occupiers or possessors of the said Grantee[s'] said premises serviced by said road, in common with them, also for the use of the Grantor herein, her heirs and assigns, her tenants and undertenants, occupiers or possessors of the said Grantor's messuage and ground adjacent to the said road.

The deed dated March 9, 1955, from Harry R. Jones *et ux.* to Edgar E. Jones and Marjorie R. Jones is recorded with the Lackawanna County Recorder of Deeds…, and conveys land comprised of 3,271.13 feet, identified in the 1955 deed as 198.25 perches, along the same "easterly boundary" that is referenced in

the 1988 easement. The present length of that easterly boundary line of the property owned by [Appellant], as reflected in the final minor subdivision plan map prepared by Nicholas A. Piccini, P.L.S., and filed in Map Book 6A…on December 20, 2002, is 1,170.86 feet after subdivision. However, the access road used by the Camp Bow Back Hunting Club in 1988 and continuing to the present does not extend along the entire "easterly boundary of lands conveyed" by the foregoing deed dated March 9, 1955, and instead curves in a westerly direction and traverses the property of [Appellant] past his residence and through the area containing stables/barns to his horses.

On February 25, 2022, the Jones Trustees commenced this action [via a complaint wherein they sought to enforce the easement over Appellant's neighboring property for the benefit of the Jones Trustees, as owners, as well as Robert Garfield Jones, Jr., as occupier.] [The Jones Trustees asserted] that [Appellant] was obstructing and interfering with the access of…the Jones Trustees to the "20-foot-wide easement extending along the easterly boundary" of the land owned by [Appellant] at [**35] Jones Drive. They sought quiet title and declaratory judgment relief definitively establishing the location and scope of the 1988 easement, and further ordering [Appellant] to remove certain impediments and to refrain from interfering with [their access to] the easement[.] Following the close of the pleadings, [on June 13, 2023,] the Jones Trustees filed a motion for summary judgment.

Trial Court Opinion, filed 1/24/25, at 1-3 (citations to record omitted).

In their motion for summary judgment, the Jones Trustees reiterated they are the owners of several parcels of land described in the July 1, 2016, deed from Robert Garfield Jones Jr., and Audrey C. Jones, his wife, to the Jones Trustees. They noted the 2016 Trustee Deed conveyed to the Jones Trustees an easement described as: "All of the interests in a certain easement granted by Marjorie R. Jones to the Grantors by an Easement dated June 10, 1988, and recorded…in Lackawanna County." Jones Trustees' Motion for Summary Judgment, filed 6/13/23, at 2.

They averred the "easement" referenced in the 2016 Trustee Deed is the same easement described in the easement agreement between Marjorie R. Jones, as grantor, and Robert Garfield Jones, Jr., and Audrey C. Jones, his wife, as grantees, dated June 10, 1988.[1] The Jones Trustees argued the 20-foot-wide roadway identified in the 1988 easement agreement provides the Jones Trustees with access to three parcels of land described in the 2016 Trustee Deed. They contended the easement is located along the easterly border of the property now owned by Appellant (and formerly owned by Marjorie R. Jones, the grantor of the easement), which abuts the westerly side of the Jones Trustees' parcels.

Moreover, the Jones Trustees indicated that Appellant is the owner of a 12.78-acre parcel of land located at **35 Jones Drive. They averred that this parcel was previously owned by Marjorie R. Jones but then conveyed to Robert G. Jones, Jr., and Pamela Jones, who in turn conveyed it to Appellant via a deed dated December 17, 2004. They noted that Appellant's 2004 deed provides that Appellant's parcel is designated as Parcel 3 on a survey map by Nicholas A. Piccini, P.L.S., dated November 2002, revised December 2002, and recorded in Map Book 6A ("2002 survey map"). The Jones Trustees averred that the easement in their favor runs from State Route 690 in a

_____

[1] The description of that easement is set forth *supra*.

northerly direction, across the easterly portion of Parcels 1, 2, and 3 (which is Appellant's parcel) as shown on the 2002 survey map. Accordingly, the Jones Trustees averred that, as owners of their parcels, they have the right to use the easement running over Appellant's parcel.

As such, they contended that Appellant's obstructing of the road easement, including using rocks, gates, barriers, and fences, interfered with their right to use the easement, which runs along the easterly side of Appellant's parcel and the westerly side of the Jones Trustees' parcels. The Jones Trustees noted that the areas in and around the easement are the only reasonable access points for the Jones Trustees to get access to portions of their parcels, thus depriving them of the use and enjoyment of their parcels.

Consequently, the Jones Trustees averred that, since the chain of title clearly demonstrated the Jones Trustees are entitled to use the easement over Appellant's property, there are no genuine issues of material fact. They averred the deeds and easement agreements demonstrate they are entitled to judgment as a matter of law.

The trial court directed Appellant to file a responsive brief. Appellant failed to do so, and, instead, he stipulated to the entry of summary judgment in favor of the Jones Trustees. The parties submitted a stipulated order granting the Jones Trustees' motion for summary judgment, which the trial court granted. Accordingly, by order dated November 8, 2023, and filed on

November 9, 2023, the trial court granted summary judgment in favor of the Jones Trustees and specifically provided the following:

> (a) [The Jones Trustees] have an easement over [Appellant's] Parcel as set forth in the 1988 Easement Agreement for the purposes set forth in the 1988 Easement Agreement, including, but not limited to, access from State Route 690 to [the Jones Trustees'] Parcels, the location of the Road Easement being as shown on the 2002 survey map;
>
> (b) [Appellant's] Parcel is subject to the 1988 Easement Agreement, including, but not limited to, the Road Easement as shown on the 2002 survey map;
>
> (c) [Appellant] is ordered to remove, at the expense of [Appellant], all of the Obstructions from the Road Easement within ten (10) days of the date of this Order;
>
> (d) [Appellant] is enjoined from in any manner blocking, impeding or interfering with access by [the Jones Trustees] over the Road Easement pursuant to the 1988 Easement;
>
> (e) [Appellant] and his heirs, devisees, personal representatives and assigns, and every other person having any interest in [Appellant's] Parcel, are forever barred from asserting any right, title, interest or lien in or on [Appellant's] Parcel inconsistent with the rights of [the Jones Trustees] under the 1988 Easement and this Order.

Trial Court Order, filed 11/9/23, at 1-2. The docket entries reveal the parties were notified of the trial court's order on November 15, 2023.

Thereafter, neither party filed an appeal from the November 9, 2023, summary judgment order. However, on December 12, 2023, the Jones Trustees filed a motion for contempt and sanctions, along with a supporting brief. Specifically, the Jones Trustees averred that, pursuant to the trial court's summary judgment order, Appellant was required to remove all obstructions from the road easement by November 20, 2023; however,

Appellant failed to do so. The Jones Trustees indicated that, on November 22, 2023, their counsel contacted Appellant's counsel to remind Appellant that the time for complying with the trial court's summary judgment order had expired, and as a courtesy, the Jones Trustees' counsel advised Appellant's counsel that it would extend the deadline for compliance to November 27, 2023.

Thereafter, Appellant failed to remove the obstructions from the road easement, thus preventing the Jones Trustees from having access to their parcels. The Jones Trustees contended that Appellant's failure to do so was willful, deliberate, and without legal justification. Moreover, the Jones Trustees averred that Appellant is in the process of erecting an additional obstruction to the road easement, including erecting a new fence along the border of the property, which will interfere with the Jones Trustees' ingress and egress to their property via the road easement. Consequently, the Jones Trustees requested the trial court find Appellant in contempt, as well as direct him to remove the obstructions immediately, pay a fine for each day of willful noncompliance, and pay the Jones Trustees' counsel fees.

On December 12, 2023, the trial court filed a rule to show cause, and on January 16, 2024, Appellant filed an answer in opposition to the Jones Trustees' motion for contempt, along with a supporting brief. Therein, Appellant relevantly contended the following:

> [W]hile [Appellant] has no objection to [the Jones Trustees'] use of the easement, there is neither historical nor actual use to obtain access to the northern portion of [the Jones Trustees'] property beyond the area marked by [Appellant] on the map as "G1". To

be explicit: while [the Jones Trustees] may have every right to drive along the easement, unless and until that easement actually touches [Appellant's] property (as it does at location "G1") [the Jones Trustees] have no right to deviate from the location of that easement upon [Appellant's] property to access [the Jones Trustees'] property. Indeed, this is preciously [*sic*] the threat [the Jones Trustees] has made to destroy [Appellant's] trees and stone wall merely because "[they have] a right to do so."

Appellant's Brief in Opposition to Contempt, filed 1/16/24, at 2. Moreover, Appellant contended that, contrary to the representations made in the Jones Trustees' motion for contempt, he, in fact, removed the barriers on the easement.

Thereafter, the parties attempted to reach a resolution. Their attorneys exchanged correspondence, to no avail. On January 3, 2025, Appellant filed a second answer to the Jones Trustees' motion for contempt. Therein, Appellant maintained the obstructions were removed, and, thus, he was not in contempt.

On January 14, 2025, the Jones Trustees filed a reply brief in support of their motion for contempt. Therein, they averred the obstructions remained on the easement. In this vein, they noted the following obstructions remained on portions of the easement: a concrete Jersey barrier and a line of small rocks and landscaping. They also noted Appellant had erected a fence in the easement along almost the entire length of the wooded back section thereof.

The Jones Trustees contended Appellant's assertion that he was not in contempt was based on his misinterpretation/misrepresentation as to the precise location of the easement. The Jones Trustees noted the easement

runs the entire easterly boundary of Appellant's property, which is shared with the Jones Trustees' property's westerly boundary. They noted Appellant argued in his answer in opposition to contempt that the easement veers off to the left/west to intersect the middle of Appellant's property, as a dirt road exists there that was previously used by another adjoining property owner, the Camp Bow Back Hunting Club. The Jones Trustees noted that the 1988 easement agreement clearly provides the easement is "twenty feet in width extending along the easterly boundary of [Appellant's property,] [and] [t]here is no dispute that the easterly boundary of [Appellant's] property runs along [the Jones Trustees'] property (at [the Jones Trustees'] westerly boundary)." Jones Trustees' Reply Brief, filed 1/14/25, at 6.

On January 15, 2025, the trial court held a hearing on the Jones Trustees' motion for contempt. At the commencement of the hearing, the parties indicated they disagreed as to the precise location of the road easement as set forth in the November 9, 2023, summary judgment order. N.T., 1/15/25, at 8. The Jones Trustees argued "the entire easterly boundary of [Appellant] contains the 20-foot easement that runs the entire length of [Appellant's] property." *Id.* at 13. On the other hand, Appellant argued the easement was a "dirt road undefined in the easement that curves away from the boundary line [of Appellant's property]." *Id.* at 14. He noted his interpretation of the easement corresponded with the easement used by the

Camp Bow Back Hunting Club, and if the easement is interpreted in the way he suggests, it would be less of an intrusion on his property. *Id.* at 18, 22.

The Jones Trustees noted the November 9, 2023, summary judgment order was stipulated to by both parties, and the order confirms that an easement exists consistent with the 1988 easement agreement as shown on the subdivision map. *Id.* at 14-15. They averred the grant of the easement is very clear in the 1988 easement agreement, and it is twenty feet in width along the easterly boundary lands. *Id.* at 16. They argued there are no words of limitation whatsoever as to the length of the easement, and it is along the easterly border lines of the lands conveyed to the grantor by the specific deed dated 1955. *Id.* The Jones Trustees noted the 1955 deed references the entire length of the easterly boundary, which at that time was over 3,000 feet. *Id.*

The parties agreed that, after the trial court entered the November 9, 2023, summary judgment order, Appellant erected a fence. The Jones Trustees averred the fence was "along the entire back portion of the boundary line in the rear of the property in the wooded area." *Id.* at 39. They averred Appellant "fenced in the entire boundary…all the way along the easterly boundary line." *Id.* Appellant, on the other hand, argued the fence "goes along the easterly boundary beginning where the road curves from the easterly boundary toward the hunting camp." *Id.* Appellant argued that the 1988 easement agreement indicates there is an "easement along a certain

roadway;" however, there has never been "a roadway past where it curves toward the hunting camp." *Id.* at 43.

Regarding obstructions on the easement, as of November 2023, the Jones Trustees indicated that there were three or four specific obstructions that existed then, as well as today. *Id.* at 44. They argued, "The odd thing about that is [Appellant] is not disputing that the portion of the lower road is the easement. [We] have no idea why he has not removed these obstructions when he has conceded that the area is rightfully the easement." *Id.* As to whether there were obstructions along the road to the Camp Bow Back Hunting Club, the Jones Trustees noted there was a metal gate, but the Jones Trustees indicated they did not care about the metal gate because, in their view, "that's not our easement." *Id.* at 45.

At this point, the parties presented their witnesses. Specifically, the Jones Trustees called Robert Garfield Jones, Jr., ("Mr. Jones") who lives on the property at **40 Jones Drive, to testify.[2] Mr. Jones testified he has lived at **40 Jones Drive for approximately forty years. He purchased the property in 1988, and, at this time, he purchased an easement from his great-aunt, Marjorie R. Jones, who owned the property where Appellant currently lives. *Id.* at 62. He testified the reason he purchased the easement was so that he could drive to the back of his property without damaging the hay fields. *Id.*

---

[2] To clarify, the Jones Trustees are the current owners of the property at **40 Jones Drive; however, Mr. Jones continues to occupy the property.

When he purchased the easement in 1988, it was his understanding that the easement was for "access in and out." *Id.* at 63. Mr. Jones clarified that it was his understanding that he was purchasing an easement that was twenty feet wide along the entire length of the boundary between his and what is now Appellant's property. *Id.* at 64.

Mr. Jones testified that he used the easement to access the rear, wooded portion of his property. *Id.* at 66. He noted that, in 1988, the first part of the easement along the boundaries of the properties was flat, and where the woods are located, there was an upward incline. *Id.* at 67.

Mr. Jones testified that, to the best of his recollection, Appellant purchased and moved into the property next to his property approximately twenty years ago. *Id.* at 68. Thus, for approximately twenty years prior thereto, he used the easement at issue. *Id.* at 69. Specifically, he traversed up and down the 20-foot area of the easement along his boundary line. *Id.* Mr. Jones testified he is no longer able to get to the rear of his property near the wooded portion because Appellant constructed a fence. *Id.* Specifically, he "constructed a fence in the 20-foot area next to the boundary line." *Id.* at 70. He noted the fence is completely enclosed, and it runs along at least three-quarters to seven-tenths of the length of the boundary line between his and Appellant's properties. *Id.* Thus, because of the fence, he is unable to access the back part of his field via the easement. *Id.* at 75, 85. He testified

Appellant constructed the fence beginning in December of 2023, after the trial judge entered the November 9, 2023, summary judgment order. *Id.* at 78.

Mr. Jones testified that, after the trial court filed the November 9, 2023, summary judgment order, Appellant did not remove a Jersey barrier, and it is within the 20-foot easement. *Id.* at 73. He noted the barrier prevents him from turning his large farm equipment into the entrance of the easement. *Id.* at 81. He noted Appellant placed a large boulder in the 20-foot easement that prevents Mr. Jones from driving his farm tractor to a clearing, and Appellant has not removed the large boulder. *Id.* at 77, 82. He also noted that, in the area where the dirt road veers off to go to the Camp Bow Back Hunting Club, but still in the 20-foot part of the lower flat part of the easement, Appellant placed a bunch of rocks and landscaping, which prevent him from turning right onto the easement to go the corner of his property. *Id.* at 86. Mr. Jones testified that he believes Appellant placed these items to "aggravate" him. *Id.* Mr. Jones testified that these obstructions still exist. *Id.*

Regarding the dirt road that veers off to the Camp Bow Back Hunting Club, Mr. Jones testified that, during the almost forty years he has lived on his property, he never considered this to be part of his easement, and he did not use it as such. *Id.* at 79.

On cross-examination, Mr. Jones testified that, when he purchased the property in 1988, there was no formal "roadway" that was twenty feet in width as described in the 1988 easement agreement. *Id.* at 90. Rather, the "certain

roadway, twenty feet in width" described in the 1988 easement agreement was two tractor tire trails along the boundary edge of the properties. *Id.* He indicated the area called the "roadway" in the 1988 easement, which he received from his great-aunt, was nothing more than an area where they moved their tractors up and down the property. *Id.* He acknowledged there is a road from Route 690 along the dividing line between his property and his neighbor's property before you get to the property of Appellant. *Id.* at 91. He testified he built that road, and it gives access to the fenced-in landscaped area just before the wooded area. *Id.* at 92. Thus, he acknowledged he had no difficulty going from Route 690 to the point where Appellant placed the fenced-in area with the landscape just before the wooded area. *Id.* Mr. Jones reiterated that the "roadway" described in the 1988 easement agreement was a path or trail along the eastern boundary of Appellant's property. *Id.* at 96.

On redirect examination, Mr. Jones testified that, when he bought the easement agreement in 1988, the purpose was so that he could cross the boundary line between his property and what later became Appellant's property at any point throughout the entire length of the easement. *Id.* at 101. Over the years, he has crossed the boundary line many times at different points along the length of the easement. *Id.* at 102. Specifically, at the points where Appellant put the large boulder, the Jersey barrier, the fence, and the enclosed area with the landscape, Mr. Jones had been able to use the easement. *Id.* He specifically testified that, because of the obstructions

- 14 -

placed by Appellant on the easement, he has no access via the easement to the rear of his field or the rear, wooded area of his property. *Id.* at 103.

On recross examination, Mr. Jones acknowledged he could drive through his fields, as opposed to using the easement in the woods to get to portions of his property. *Id.* However, as a farmer, it is not ideal to drive a tractor through fields, particularly when they are used for hay or planting. *Id.*

Appellant admitted he is the adjoining property owner to Mr. Jones, and he purchased his property in 2002. *Id.* at 105. He testified that, when he purchased the property, he was unaware of the easement because he did not discover it during a title search. *Id.* Appellant admitted he placed a Jersey barrier at the beginning of his property in front of the easement because, at that point, he did not believe Mr. Jones had any right to enter onto his property. *Id.* at 106. He noted that, when he received the trial court's November 9, 2023, order, he immediately removed the Jersey barrier. *Id.* at 107.

Appellant admitted that he placed a large boulder in the middle of what Mr. Jones claims is the easement. *Id.* Appellant indicated he placed the large boulder because, at that point, he did not believe Mr. Jones had any right to access that portion of his property. *Id.* He admitted that the large boulder is still in the location where he originally placed it, and he did not remove it after the trial court's November 9, 2023, order. *Id.* at 108. Although he acknowledged the trial court's November 9, 2023, order provided that the

Jones Trustees and Mr. Jones were permitted to use this area via their easement, he testified he "really didn't know" why he didn't move the large boulder. *Id.* at 108, 119.

Appellant admitted that he installed fence posts "very close to the property line" between his and Mr. Jones' properties. *Id.* Appellant testified that, in the twenty years he has lived on his property, he has never seen anyone drive from the point where the road veers to the left, through the wet area, and up his current fence line. *Id.* at 109. He indicated it was "just a foot path." *Id.* at 119. He testified he never saw Mr. Jones take farm equipment through this part of the woods along his current fence line. *Id.* He noted the road that veers to the left leads to the Camp Bow Back Hunting Club. *Id.* at 112-13.

Appellant testified the area along the length of his fence line is where Mr. Jones believes he has a 20-foot easement. *Id.* at 113. However, Appellant testified there has never been a "roadway" in this vicinity along the length of his property. *Id.* Appellant testified he constructed the fence to enclose his horses, and the fence is "permanent." *Id.* at 116. He acknowledged the fence runs along the easterly border of his property. *Id.*

Appellant specifically testified that, during the twenty years he has lived on his property, he never saw anyone, including Mr. Jones, drive from where the road veers toward the rear of Appellant's property along the line where Appellant installed his fence. *Id.* at 120.

On cross-examination, Appellant admitted that he placed a concrete Jersey barrier in the front of a gate to block Mr. Jones' and the Jones Trustees' access to the easement because, at that time, he did not know they had an easement. *Id.* at 121. He noted that, after the trial court issued the November 9, 2023, order, he "slid the barrier to the side." *Id.* at 122. However, he acknowledged that the Jersey barrier is "still within the easement held by [the Jones Trustees], the [twenty] feet along the boundary line." *Id.* He pointed out that it is not restricting access to the easement, but it is within the easement. *Id.*

Appellant admitted that he erected the permanent wooden fence, and it "is on the 20-foot easement along the boundary line of [the] properties." *Id.* at 123. He agreed he did not remove the fence. *Id.* He acknowledged that there is a tree line that is "more or less" the boundary of his and Mr. Jones' properties. *Id.* He acknowledged there was a large boulder in a clearing of the woods along this boundary line. *Id.* at 124. He acknowledged he placed the large boulder, has not removed the boulder, and it prevents Mr. Jones from driving through the area. *Id.* at 125.

Appellant admitted that he placed stones and landscaping on an area of his property, and these items prevent Mr. Jones from turning "to the right to get to the corner of his property without driving over the landscaping." *Id.* at 126. However, Appellant testified that Mr. Jones couldn't get to that point where the stones and landscaping are located without driving through trees

or outside of the 20-foot easement. *Id.* He acknowledged that the trees to which he was referring are within the 20-foot easement on the boundary line, and if Mr. Jones cuts down the trees, he would then be at the point where Appellant placed the stones and landscaping to prevent access. *Id.*

Appellant acknowledged the property boundary line is three or four feet to the right of his fence, and "but for the fence," there is a little clearing between the trees through which a person could drive. *Id.* at 127. He acknowledged that, given the fence and trees, there is enough room to drive on the right side of the fence posts but not on the left side. *Id.* Appellant testified that, even if the 20-foot easement is situated where the Jones Trustees aver it is situated, there is no way "to drive straight up that 20-foot right of way without being outside of the 20-foot easement." *Id.* at 128. Appellant testified he did not know whether, if he removed the fence, there would be sufficient room to weave through the trees while remaining on the 20-foot easement. *Id.* However, he testified that, with the fence as currently situated, Mr. Jones can drive "up the whole right side of that fence." *Id.* Appellant admitted that "if you wanted to stay on this right of way, are the fence posts in the way? Well, absolutely. The 20-foot easement is to the left of the posts[.]" *Id.*

Appellant admitted that certain trees are "within the 20-foot" boundary of the property lines, so they might be considered within the 20-foot easement. *Id.* at 129. However, he testified that, in his opinion, even if on

the easement, the trees on his side of the boundary line cannot be cut down by the Jones Trustees without Appellant's permission. *Id.*

Although he could not remember when he started to construct the fence, Appellant admitted he finished the fence after the trial court filed the November 9, 2023, order. *Id.* at 130. He agreed that, at the bottom of his fence, there is an "L shape" with a "square area." *Id.* He admitted that, if the Jones Trustees have a 20-foot easement along the entire boundary line of the properties, his fence is "in the way" of anyone traveling straight up the easement. *Id.*

Appellant testified he does not dispute that the Jones Trustees have an easement, which is twenty feet wide along the easterly side of his boundary on the lower part along the flat, dirt road. *Id.* at 131. Even though he admitted the Jones Trustee have an easement in this area, he acknowledged that his Jersey barrier is still "on the easement." *Id.* He acknowledged the large boulder was also on the easement, but he explained he did not move it because the "rock was never mentioned," so he didn't know he had to move it. *Id.* at 132. He acknowledged the fencing at the corner with the rocks and landscape was on the easement, but he testified he did not remove these obstructions because, in his view, the Jones Trustees couldn't access that area without first going onto his property outside of the easement. *Id.* He specifically testified, "[W]hat good is it to have that hole in the fence when, without trespassing on my property, he can't access it?" *Id.*

As to Mr. Jones' ability to access the rear of his property, Appellant acknowledged that there is no way for Mr. Jones to drive to the back of his property because of the fence Appellant erected, as well as the trees on the boundary lines. *Id.*

On redirect examination, Appellant testified that, from the wet area of his property where he placed the fence to the back of his property, he does not believe the Jones Trustees have an easement. *Id.* at 134. He testified that, beginning at the wet area on the other side of the fence, there is no way for the Jones Trustees to get to the area where the L-shaped fence, rocks, and landscaping are situated without first deviating from the easement onto Appellant's property. *Id.* He noted the trees along the boundary lines have been there since he purchased the property twenty years ago. *Id.* He never witnessed Mr. Jones driving through this area before he erected the fence. *Id.*

On recross examination, Appellant admitted that, if Mr. Jones did not want to drive straight through the wet area, Mr. Jones could cut trees down on his side of the property and drive around it onto his side of the property since it abuts the wet area. *Id.* at 135.

By order and opinion filed on January 24, 2025, the trial court denied the Jones Trustees' motion for contempt and sanctions. Relevantly, the trial court held:

> [T]he language of the stipulated Order arguably could have
> been drafted with greater geographic specificity so as to remove

any doubt that the [20]-foot-wide easement granted on June 10, 1988, extends "along the [entire] easterly boundary of lands" formerly owned by Marjorie R. Jones and consisting of the 3,271.13 feet and parallel to the adjacent westerly boundary of the property occupied by [Mr. Jones] and owned by the Jones Trustees. The credible evidence demonstrated that [Appellant] subjectively believed, albeit mistakenly, that the dimensions of the 1988 easement were defined by the Camp Bow Back Hunting Club access road, as a result of which he erroneously concluded that the foregoing fencing, Jersey barrier, boulder, posts and cement bases, rocks and landscaping were not erected or positioned within the Jones Trustees' easement. Construing any ambiguities or uncertainties in the stipulated summary judgment order of November 9, 2023, in favor of [Appellant], the Jones Trustees did not prove by a preponderance of the evidence that [Appellant] "acted with wrongful intent" or displayed "an intentional disobedience or an intentional disregard of the lawful process of the court" by installing or placing those items within the Jones Trustees' [20]-foot-wide easement.

Trial Court Opinion, filed 1/24/25, at 10-11 (citation omitted).

Although the trial court did not hold Appellant in contempt due to the "ambiguities or uncertainties in the stipulated summary judgment order of November 9, 2023," the trial court held the easement is twenty feet wide and extends along the entire length of the easterly boundary of Appellant's property. Accordingly, the trial court determined Appellant's obstructions on the easement improperly interfered with the Jones Trustees' use thereof.

As such, the trial court directed that, within thirty days, Appellant shall remove the fencing, fence posts, Jersey barrier, large boulder, steel posts, and rocks/landscaping on the easement or face contempt. *Id.* The trial court specifically noted that Appellant "is cautioned that if he fails to remove the aforementioned obstructions within the next [thirty] days, or should he

otherwise continue to impede or interfere with any access to that easement area by the Jones Trustees or Mr. Jones, another motion for contempt and sanctions will be warranted." *Id.*

On February 18, 2025, Appellant filed a motion for reconsideration, upon which the trial court did not rule. On February 21, 2025, Appellant filed a notice of appeal. All Pa.R.A.P. 1925 requirements have been met.

On appeal, Appellant presents the following issue in his "Statement of Questions Involved" (verbatim):

> Whether the trial court committed an error in finding that the easement in question was located along the easterly boundary of Appellant's property as opposed to that which is shown in the "1988 Easement Agreement" and the 2002 survey map?

Appellant's Brief at 3 (suggested answer omitted).

Initially, we note our precedent provides that "an order denying a petition for contempt" is final and appealable when it is "entered in relation to a prior final order." *Schultz v. Schultz*, 70 A.3d 826, 828 (Pa.Super. 2013). Here, the trial court's January 24, 2025, order denying contempt, from which Appellant appeals, was entered in relation to a prior November 9, 2023, stipulated order entering summary judgment in favor of the Jones Trustees. Consequently, the trial court's January 24, 2025, contempt order is a final, appealable order. *Id.*

Moreover, it is noteworthy that, although Appellant appeals from an order denying the Jones Trustees' petition for contempt, and, thus, at first glance, he appears to be the prevailing party, Appellant has standing in this

matter. *See Epstein v. Saul Ewing, LLP*, 7 A.3d 303 (Pa.Super. 2010) (holding that where an order is entered in a party's favor the prevailing party is not aggrieved and lacks standing to appeal). Specifically, the trial court's January 24, 2025, order clarified the court's November 9, 2023, stipulated summary judgment order adversely to Appellant, as well as directed that Appellant remove all obstructions from the easement within thirty days. Accordingly, Appellant is aggrieved by the trial court's final order entered on January 24, 2025, and, thus, he has standing to appeal therefrom. *In re Interest of K.C.*, 156 A.3d 1179, 1182 (Pa.Super. 2017) (holding that a party is aggrieved where he or she has been "adversely affected by the decision from which the appeal is taken").

Turning to Appellant's specific issue, Appellant challenges the trial court's holding as it relates to the court's "clarification" of the November 9, 2023, summary judgment order.[3] Appellant contends the trial court erred, as

_____

[3] We note the parties intermingled several issues during the contempt proceedings, including requesting that the trial court clarify the prior summary judgment order/make a declaration regarding the geographic location of the easement at issue. Appellant does not challenge whether the trial court was permitted to clarify its November 9, 2023, summary judgment order and/or provide declaratory relief as requested in the Jones Trustees' complaint via the contempt proceedings at issue. Thus, we shall overlook any procedural irregularity in this regard. *See Kulback v. Kulback*, 309 A.3d 1067 (Pa.Super. 2023) (unpublished memorandum) (discussing the parties' decision to intermingle several issues during a contempt proceeding in a property case); Pa.R.A.P. 126(b) (providing unpublished non-precedential memorandum decisions of this Court filed after May 1, 2029, may be cited for their persuasive value).
*(Footnote Continued Next Page)*

a matter of law, in its interpretation of the 1988 easement agreement. Specifically, Appellant contends the trial court erred in determining the "location of the easement in question [is] along the [entire] easterly boundary of Appellant's property[.]" Appellant's Brief at 6. Appellant avers the deeds of record and 2002 survey map "clearly and unambiguously" set forth the location and extent of the 1988 easement. *Id.* at 12. In this vein, Appellant asserts the easement runs along a portion of the easterly border of his property, but stops where the road turns west, away from the eastern boundary toward the Camp Bow Back Hunting Club. *Id.* at 14.

_____

Finally, we note that Appellant did not file post-trial motions. *See* Pa.R.Civ.P. 227.1. To the extent Appellant's issue relates to contempt/enforcement of the trial court's November 9, 2023, summary judgment order, we note post-trial motions were not required in the case *sub judice*. *See* Pa.R.Civ.P. 227.1, Comment *(*indicating motions for post-trial relief may not be filed to matters governed exclusively by the rules of petition practice, such as contempt proceedings). The same theory applies if Appellant's issue relates to the clarification of the entry of summary judgment in favor of the Jones Trustees. *Bostick v. Schall's Brakes & Repairs, Inc.,* 725 A.2d 1232, 1236 (Pa.Super. 1999). To the extent the trial court's January 29, 2025, order may be construed as one granting the Jones Trustees requested declaratory judgment relief after a bench trial, and Appellant's issue relates thereto, we note that post-trial motions are generally required to preserve issues. *See Motorist Mut. Ins. Co. v. Pinkerton*, 830 A.2d 958 (Pa. 2003). However, consistent with *Kulback*, *supra*, since the parties and trial court proceeded as if resolving the underlying matter was a question of contempt/enforcement, we decline to quash for Appellant's failure to file post-trial motions. *Kulback*, *supra* (where parties and trial court intermingled actions in contempt hearing, and, thus, considered partition action as question of contempt/enforcement, this Court declined to quash for the appellant's failure to file post-trial motions).

Initially, we note the interpretation of an easement agreement, like any contract, concerns a question of law, and, thus, our standard of review is *de novo*, and our scope of review is plenary. **PARC Holdings, Inc. v. Killian**, 785 A.2d 106, 112 (Pa.Super. 2001).

"An easement is a right in the owner of one parcel of land by reason of such ownership to use the land of another for a special purpose not inconsistent with a general property in the owner." **Clements v. Sannuti**, 51 A.2d 697, 698 (Pa. 1947) (emphasis, quotation marks, quotation, and citations omitted). "[A]n easement is an abstract property interest that is legally protected." **Forest Glen Condominium Ass'n v. Forest Green Commons Ltd. Partnership**, 900 A.2d 859, 864 (Pa.Super. 2006) (quotation marks and quotation omitted).

As occurred in the case *sub judice*, easements may be created by an express grant. **Amerikohl Mining Co., Inc. v. Peoples Natural Gas Co.**, 860 A.2d 547 (Pa.Super. 2004).

> To ascertain the nature of the easement created by an express grant we determine the intention of the parties ascertained from the language of the instrument. Such intention is determined by a fair interpretation and construction of the grant and may be shown by the words employed construed with reference to the attending circumstances known to the parties at the time the grant was made.
>
> Ambiguous words are construed in favor of the grantee. Where a deed or agreement or reservation therein is obscure or ambiguous, the intention of the parties is to be ascertained in each instance not only from the language of the entire written instrument in question, but also from a consideration of the subject matter and the surrounding circumstances.

*Id.* at 550 (quotation marks and quotations omitted). *See Southall v. Humbert*, 685 A.2d 574, 577 (Pa.Super. 1996) ("[T]he rules of construction apply to deeds granting easements as to contracts generally.") (quotation marks and quotations omitted)).

Here, in determining the geographic scope of the express easement, the trial court began by setting forth the language from the easement agreement dated June 10, 1988, which states, in relevant part, that the grantor, Marjorie R. Jones:

> …has granted, bargained and sold, and by these presents does grant, bargain and sell unto the said Grantees, their heirs and assigns, the free and uninterrupted use, liberty and privilege of, and passage in and along a certain roadway, twenty feet in width extending along the easterly boundary of lands conveyed to the Grantor by deed of Henry R. Jones *et ux.* to Edgar E. Jones and Marjorie R. Jones, his wife, by deed dated March 9, 1955, and recorded in Lackawanna County in Deed Book [***] at Page [***]. The said Edgar E. Jones died May 27, 1959, and thus by operation of law title to the within premises vested in his wife, Marjorie R. Jones, the Grantor herein. The said road is presently used by Camp Bow Back Hunting Club as an easement appearing in deed dated April 3, 1961, recorded in Lackawanna County Deed Book [***] at Page [***].
>
> TOGETHER, with free ingress, egress and regress to and for the said Grantees, their heirs and assigns, their tenants and undertenants, occupiers or possessors of the said Grantee[s'] said premises serviced by said road, in common with them, also for the use of the Grantor herein, her heirs and assigns, her tenants and undertenants, occupiers or possessors of the said Grantor's messuage and ground adjacent to the said road.

Trial Court Opinion, filed 1/24/25, at 2.

In interpreting this language in the easement agreement, the trial court

relevantly held as follows:

> [T]he deed dated March 9, 1955, from Harry R. Jones *et ux.* to Edgar E. Jones and Marjorie R. Jones is recorded…and conveys lands comprised of 3,271.13 feet, identified in the 1955 deed as 198.25 perches, along the same "easterly boundary" that is referenced in the 1988 easement. The present length of that easterly boundary line of the property owned by [Appellant], as reflected in the final minor subdivision plan map prepared by Nicholas A. Piccini, P.L.S., and filed in Map Book 6A…on December 20, 2002, is 1,170.86 feet subdivision.  However, the access road used by Camp Bow Back Hunting Club in 1988 and continuing to the present does not extend along the entire "easterly boundary of lands conveyed" by the foregoing deed dated March 9, 1955, and instead curves in a westerly direction and traverses the property of [Appellant] past his residence and through the area containing stables/barns to house his horses.
>
> ***
>
> The gravamen of [Appellant's] argument is that the 1988 easement begins on the easterly boundary of his land, but thereafter continues only as the road being "used by Camp  Bow Back Hunting Club as an easement," rather than encompassing the "certain roadway, twenty feet in width extending along the easterly boundary of lands conveyed" to [Appellant] by the heirs of Marjorie R. Jones via a deed dated December 17, 2004[.] During the contempt hearing on January 15, 2025, testimony was received from [Mr. Jones] and [Appellant]; however, [Mr. Jones] was the only testifying witness who was a named party to the 1988 easement from Marjorie R. Jones to [Mr. Jones] and his wife, Audrey C. Jones.  Thus, [Mr. Jones] was the sole person who testified concerning the intentions of those parties, the circumstances surrounding the grant of the 1988 easement, and the object the parties sought to obtain by that easement.
>
> ***
>
> [The] evidence established that the 1988 easement was granted "twenty feet in width extending along the easterly boundary" of Marjorie R. Jones' land consisting of 3,271.13 feet in

order to provide [Mr. Jones] a means by which to access the wooded rear of his property without harming his hay crop or creating ruts in the softer fields by the use of his tractor. The inexplicable reference to the Camp Bow Back Hunting Club road easement in the 1988 easement does not identify the width, metes, or bounds of that particular easement, which apparently was mentioned parenthetically as another easement burdening Marjorie R. Jones' lands. It is inconceivable that the Camp Bow Back Hunting Club easement road was intended to be the easement "twenty feet in width extending along the easterly boundary" of Marjorie R. Jones' lands since it would not provide [Mr. Jones] access to the rear of his property, and instead would encroach significantly upon Marjorie R. Jones' land, which is currently owned and occupied by [Appellant]. Assuming, *arguendo*, that the inclusion of the sentence mentioning the Camp Bow Back Hunting Club road created an ambiguity regarding the subject 20-foot-wide easement, the credible evidence concerning the intention of the contracting parties, their circumstances in 1988, and the goal they achieve resolved any such uncertainty.

The clear intention of Marjorie R. Jones, [Mr. Jones], and [his wife,] Audrey C. Jones in creating the easement on June 10, 1988, was to establish for [Mr. Jones] and Audry C. Jones, and their heirs, assigns, tenants, undertenants, occupiers, and possessors "free ingress, egress, and regress" and "free and uninterrupted use, liberty, and privilege of, and passage in and along a certain roadway, twenty feet in width extending along the easterly boundary" of Marjorie R. Jones' property consisting of 3,271.13 feet or 198.25 perches in order to provide [Mr. Jones] and his wife, Audrey C. Jones, free access to the rear of their property. The 1988 easement, which was originally granted to [Mr. Jones] and Audrey C. Jones, and later conveyed to the Jones Trustees, is clearly twenty feet in width and extends along the entire easterly boundary of the property of [Appellant] and the full westerly boundary of Parcel 1[, which is] currently occupied by [Mr. Jones] and owned by the Jones Trustees. To the extent that the stipulated summary judgment order of November 9, 2023, required clarification or confirmation as to the exact location and parameters of the 1988 easement referenced [in the order], this contempt order now provides such explanation or affirmance.

*Id.* at 4-7 (citations omitted).

We agree with the trial court's sound rationale. Here, in determining the geographic location of the easement, the trial court properly examined the language of the 1988 easement agreement to determine the intention of the parties, particularly since the parties' stipulated summary judgment order provided the Jones Trustees have an easement over Appellant's parcel as set forth in the 1988 easement agreement. **Amerikohl Mining Co., Inc.**, **supra**. The trial court properly held the language of the 1988 easement agreement provides for an easement "twenty feet in width extending along the easterly boundary of lands conveyed" from Henry R. Jones *et ux.* to Majorie R. Jones (and her deceased husband, Edgar E. Jones) in a March 9, 1955, deed. This was a fair interpretation and construction of the easement, particularly when construing the words "with reference to the attending circumstances known to the parties at the time the grant was made." **Id.** at 550.

In this vein, the trial court noted that the parties to the 1988 agreement included Marjorie R. Jones and her great-nephew, Mr. Jones, who testified during the hearing. Relevantly, Mr. Jones testified the purpose of the easement was so that Mr. Jones could access the wooded rear of his property without harming hay crops or creating ruts in the fields. This intention is consistent with the easement extending along the entire eastern boundary of land, which was described in the March 9, 1955, deed, as 198.25 perches or 3,271 feet in length. Appellant subsequently acquired a portion of the land described in the March 9, 1955, deed, which, according to the 2002 survey

map, currently has an eastern boundary line of 1,170.86 feet. Notably, the parties' stipulated summary judgment order specifically referred to and indicated Appellant's parcel was subject to the easement as shown on the 2002 survey map. As there are no words in the 1988 easement agreement limiting the length of the easement, the trial court properly found that Appellant's entire eastern boundary is subject to the easement. *See PARC Holdings, Inc.*, *supra* (holding rules of contract interpretation are applicable to the interpretation of express easements).

Further, as to the reference to the Camp Bow Back Hunting Club road in the 1988 easement agreement, we agree with the trial court that this was a reference to a different easement burdening Marjorie R. Jones' lands. *See* Trial Court Opinion, filed 1/24/25, at 6. Specifically, the 1988 easement agreement refers to "along a certain roadway" and that "[t]he said road is presently being used by Camp Bow Back Hunting Club as an easement appearing in deed dated April 3, 1961, recorded in Lackawanna County[.]" *Id.* at 2. The deed dated April 3, 1961, is a conveyance from Marjorie R. Jones to Everett Tooley *et al.* for land, as well as the accompanying easement for the Camp Bow Back Hunting Club. Thus, the 1988 easement agreement indicates the presence of an additional easement created by the April 3, 1961, deed, which burdens Appellant's parcel, but it does not describe the easement conveyed to the Jones Trustees under the 1988 easement agreement. Further, the access road used by Camp Bow Back Hunting Club does not

extend along the entire length of the "easterly boundary of lands" conveyed by the 1955 deed, but instead, the road turns in a westerly direction. ***See PARC Holdings, Inc.***, ***supra***.

Moreover, to the extent the reference to the road used by the Camp Bow Back Hunting Club created an ambiguity in the 1988 easement agreement, we note that ambiguities are construed in favor of the grantee, which in this case is Mr. Jones and the Jones Trustees. ***Amerikohl Mining Co., Inc.***, 860 A.2d at 550. Moreover, the trial court held that, assuming, *arguendo*, there was an ambiguity, the "evidence concerning the intention of the contracting parties, their circumstances in 1988, and the goal they sought to achieve resolved any such uncertainty" that the easement was intended to extend along the entire easterly boundary of Majorie R. Jones' land, which was then conveyed to Appellant. Trial Court Opinion, filed 1/24/25, at 6. We find no error in this regard. ***Amerikohl Mining Co., Inc.***, ***supra*** (holding in interpreting easement agreements the trial court may consider the subject matter and the surrounding circumstances in resolving any ambiguities).

Accordingly, for all of the aforementioned reasons, we affirm.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>10/24/2025</u>